FOURNET, Justice.
 

 This is a sequel to the case of McGee et al. v. Yazoo & M. V. R. Co. 206 La. 121, 19 So.2d 21, wherein we held that the manner in which the defendant operated its terminal facilities located on its ten-acre tract of land in Bossier City, Louisiana, consituted an actionable nuisance, and ordered it to remedy .and abate the same, awarding damages in compensation for the injuries suffered by the plaintiffs in that suit who were property .owners living in the vicinity of the facilities.
 

 Soon after the judgment became final in 'that case, Mr. and Mrs. C. M. Brown, who had been among the parties plaintiff, joined by Mr. and Mrs. Frank Devoke and some ■85 other property owners in this same vicinity, making substantially the same basic allegations as in the McGee case, instituted the present action against the defendant ■claiming damages for injury to their health and property by reason of the defendant’s ■continued operation of these facilities in a wrongful, negligent, harmful, and unlawful .manner, thereby causing the emission of a continuous dense and obnoxious smoke, including gases, soot and cinders, with the consequent infiltration of this polluted atmosphere into their homes and resultant injuries to their health, comfort, and homes, the paint and screens thereof being destroyed and the wallpaper, floors, and contents of their homes being damaged, thus constituting the defendant’s terminal operations a public and private nuisance. In addition, in their petition is contained the allegation that such operations are not only in violation of the mandate of this court in the McGee case, but also of Ordinance No. 283 of Bossier City, adopted in October 1941, making it unlawful for any railroad to fire any cold steam boiler, steam engine, or locomotive within the corporate limits “except inside of a roundhouse or other building equipped with a smokestack, smoke eliminator, or dispenser or other device which will prevent the issuance of dense or obnoxious smoke into the atmosphere.”
 

 The defendant, in its answer, admitted that it operates the facilities complained of, consisting of a turntable with spur tracks, as a coaling station and firing point for its western terminal almost continuously, using coal burning engines or locomotives that are refueled and fired on the property, as well as the adoption of the ordinance of Bossier City, but it generally denied all of the other allegations in the petition of the plaintiffs. Shortly after the trial of the case was begun, the defendant filed an amended answer setting up as a special defense “that
 
 *736
 
 the granting of any recovery for damages herein would constitute a taking of defendant’s property without due process of law and without adequate compensation paid, in contravention of Article I, Section 2 of the Constitution of the State of Louisiana, and the Fourteenth Amendment to the Constitution of the United States.” At the conclusion of the trial, the defendant pleaded the prescription of one year in bar of any and all claims for damages that might have been suffered more than a year prior to the filing of the suit.
 

 The trial judge overruled the plea of prescription on the ground that the operating cause of the injury was a continuous one, giving rise to successive damages, and that prescription could not, therefore, begin to run until the cessation of the alleged cause of the damage. Being of the opinion, also, that aside from a failure to ask for injunctive relief and differences.of detail in pleading this case is indistinguishable from the McGee case, its cause of action and defenses being substantially identical, he held that the decision on the merits in the McGee case was decisive of the same issues here involved and he rendered judgment accordingly. In such judgment, with the exception of Mr. and Mrs. Brown, who were awarded damages in the McGee case, and some 10 others who were awarded special damages because they had maintained their residences in the affected zone a shorter period of time, he awarded each plaintiff $350 for mental anguish and inconvenience, computed on the basis of the $250 awarded for this same injury in the McGee case plus $100 for the additional time between the decision in the McGee case in 1942 and the filing of this case in 1944; and he awarded damages for each residence affected in the sum of $300 and for each garage apartment in the sum of $150. Because of voluntary nonsuits entered on behalf of some seven plaintiffs, the awards have no application to them, nor to some three individuals, who have died since the suit was instituted. In all, the awards amount to approximately $42,000. The defendant is appealing.
 

 Since the appeal was lodged in this court, on the motion of the Illinois Central Railroad Company, showing that it has acquired the Yazoo & Mississippi Valley Railroad Company, it has been substituted as the defendant.
 

 The matter in controversy here is not without precedent for we find that the defendant’s predecessor in title, the Vicksburg, Shreveport & Pacific Railway Company, was ordered by this court to take active measures to prevent the spreading of smoke to an injurious extent toward the homes of the complaining parties in 1910. Tucker v. Vicksburg, S. & P. R. Co., 125 La. 689, 51 So. 689. Presumably the company heeded the mandate of this court for in so far as the record shows the roundhouse in Shreveport, then being used, was continued without further serious complaint, even after it was taken over by the Yazoo & M. V. R. Co., the defendant here. In 1932, because-
 
 *738
 
 of expanding business, the defendant discontinued the Shreveport terminal and used the Bossier City facilities exclusively to serve the combined needs of the two systems and while no legal action was taken until the McGee case was filed in 1942, it appears that the property owners in the vicinity of this terminal facility were experiencing considerable discomfort and injury to their property and that this has been greatly increased during recent years because of the activity occasioned by the war. In 1944 we affirmed 'the judgment of the lower court in the McGee case concerning the manner in which these facilities were being operated and directing the defendant to take steps to correct the nuisance thus created. We also affirmed the lower court’s award of $500 to each plaintiff, or set of plaintiffs where the wife was joined in the suit, for mental anguish, worry, and inconvenience, and $250 for damage to each of the residences in the area affected. McGee v. Yazoo & M. V. R. Co., supra. The judgment having become final in June of 1944, on December 1, following, the present plaintiffs instituted this suit to recover for damages allegedly sustained by them from the same cause during the same period of time covered by the McGee case, and for the additional time intervening between the institution of the McGee case and its final decision by the Supreme Court.
 

 Aside from the fact that no injunctive rejief is sought here, we think, as did the trial judge, that this case is indistinguishable from the McGee case except for some details in pleading and conclude, as he did, that the evidence clearly establishes the claim of the plaintiffs that they have suffered substantial injury to their property and that their enjoyment thereof has been greatly hampered as the result of the dense smoke, soot, cinders, and fly ash dispersed by the defendant in the operation of its terminal facilities in the open, contrary to the ordinance of the City of Bossier. We do not deem it necessary to give a detailed analysis of the evidence on this phase of the case. It could but serve to unduly lengthen the opinion and obscure the issues. Suffice it to say that most of the testimony offered by the defendant is but a duplication of that offered during the trial of the McGee case.
 

 Counsel for the defendant-appellant, however, contend that neither in common law jurisdictions nor under Louisiana law can there be any recovery without actionable negligence for injuries sustained by reason of the operation of a lawful business and that inasmuch as their facilities at Bossier City are being operated as a necessary part of the defendant’s legally constituted railroad system with the most improved methods and devices known to the industry for the suppression of smoke and other noxious substances, such injuries as the plaintiffs may have suffered in this case are damna absque injuria, citing as authority the cases of Werges v. St. Louis C. & N. O. R. Co., 35 La.Ann. 641; Hill v. Chicago, St. Louis & N. O. R. Co., 38 La.Ann. 599; Froelich
 
 *740
 
 er v. Oswald Ironworks, 111 La. 705, 35 So. 821, 64 L.R.A. 228; LeBlanc v. Orleans Ice Mfg. Co., 121 La. 249, 46 So. 226, 17 L.R.A., N.S., 287; Tucker v. Vicksburg, S. & P. Ry. Co., 125 La. 689, 51 So. 689; Orton v. Virginia Carolina Chemical Co., 142 La. 790, 77 So. 632; Irby v. Panama Ice Co., 184 La. 1082, 168 So. 306; McGee v. Yazoo & M. V. R. Co., 206 La. 121, 19 So.2d 21; Eagen v. Tri-State Oil Co., La.App., 183 So. 124; 1 C.J.S., Actions, § 15(b), p. 1006; Donovan v. City of New Orleans, 11 La.Ann. 711; Eclipse Towboat Co. v. Pontchartrain R. Co., 24 La.Ann. 1; Luke v. Morgan’s Louisiana & T. R. & S. S. Co., 147 La. 30, 84 So. 483; McCoy v. Arkansas Natural Gas Corporation, 191 La. 332, 185 So. 274; McIlhenny v. Roxana Petroleum Corporation, 10 La.App., 692, 122 So. 165; and Loesch v. R. P. Farnsworth & Co., La. App., 12 So.2d 222, and claiming that to hold otherwise would be tantamount to taking its property without due process of law and without adequate compensation paid, in contravention of Article I, Section 2 of the Constitution of Louisiana and the Fourteenth Amendment to the Constitution of the United States; contending, further, that in any event the plaintiffs’ claims for damages have been barred by the prescription of one year, such damage as the plaintiffs proved having been actually sufféred more than one year prior to the institution of the suit.
 

 It is the universally accepted rule of law that “The owner of property has a right to conduct thereon any lawful business not per se a nuisance, as long as the business is so conducted that it will not unreasonably inconvenience a neighbor in the reasonable enjoyment of his property. But every business, however lawful, must be conducted with due. regard to the rights of others, and no one has a right to erect and maintain a nuisance to the injury of his neighbor even in the pursuit of a lawful trade, or to conduct a business on his own land in such a way as will be injurious or offensive to those residing in the vicinity” (39 Am.Jur. 324, Section 43), and liability in such cases does not depend upon the question of negligence. Sections 4 and 24, pages 282 and 304. See, also, Winfield’s Textbook of the Law of Tort, 2d Ed., Sections 133 and 138, pages 481 and 516; Harper on Torts, Sections 180, 181, and 182; 20 R.C.L. 381, Sections 3 and 5; 46 C.J. 663, Section 28; Camfield v. United States, 167 U.S. 518, 17 S.Ct. 864, 42 L.Ed. 260; Dixie Ice Cream Co. v. Blackwell, 217 Ala. 330, 116 So. 348, 58 A.L.R. 1223; Herman v. City of Buffalo, 214 N. Y. 316, 108 N.E. 451; Pearson v. Kansas City, 331 Mo. 885, 55 S.W.2d 485; Toft v. City of Lincoln, 125 Neb. 498, 250 N.W. 748; and other cases referred to in 28 Words and Phrases, Perm.Ed., Nuisance, pages 930-942.
 

 In the case of Tucker v. Vicksburg, S. & P. Ry. Co., supra, it was contended, as here, that the railroad, being a quasi public corporation, smoke, cinders, and other unpleas
 
 *742
 
 ant annoyances connected therewith are consequential, unavoidable and inevitable damages to which the neighbors must submit for the public good and while the court did say it did not intend to hold contrary to that view, it pointed out that “ * * * the defendant should bear in mind that grants of privileges confer no right to use in disregard of private rights,” [125 La. 689, 51 So. 691] and that “in a populous part of a city greater precaution must be taken to avoid inflicting annoyances, discomfort, and distress than in the open country,” and ordered the defendant to abate such nuisance by erecting smoke wells or stacks or to adopt other effective devices necessary to prevent the mischief complained of.
 

 In the McGee case [206 La. 121, 19 So.2d 27] the court quoted with approval the following from Ruling Case Law: “The construction of a railroad, and its operation in the usual mode, certainly do not constitute a nuisance per se; but it is also true that railroad construction or equipment by reason of surroundings or the manner of operation may prove to be a nuisance as a matter of fact. * * * The quasi public character of railroads does not . Gieve them of liability; and if they have done acts which result in nuisances, they are in no different situation than an individual proprietor. The location of yards, terminals, shops, coaling stations, etc., is a matter which admits of a wide latitude in choice of sites, and therefore the courts are less inclined to relieve railroad companies from the results of nuisances committed in and about them than from those arising in the operation of the road proper.” Section 69 of Volume 20, page 454. The court also observed that “Smoke, soot and noxious gases may constitute an actionable nuisance although produced and carried on by a lawful business, where they result in material injury to neighboring property or interfere with its comfortable use and enjoyment by persons of ordinary sensibilities. There is no precise test applicable in all cases by which to determine whether smoke, soot or gas constitute a nuisance, but the question depends upon the circumstances of the particular case, and generally is a question of fact,” citing 39 Am.Jur. 336, Sections 54-58 as authority.
 

 While in the cases relied on by the appellant there are to be found expressions that apparently support its claim, the holdings in these cases are not at variance with the universal rule of law above quoted nor do they have the effect of changing or abrogating it. Analysis will show that some of these cases are clearly inapplicable to the issues presented in this case and that the decisions in the others are not controlled by the expressions quoted from them to support the contention of the defendant.
 

 The basic law of this state on the subject matter is to be found under the heading “Of Servitudes Imposed by Law,” in Chapter 3 of Title IV of the Revised Civil Code entitled “Of Predial Servitudes or
 
 *744
 
 Servitudes of Land,” wherein it is declared: “The law imposes upon the proprietors various obligations towards one another, independent of all agreements; and those are the obligations which are prescribed in the following articles.” Article 666. “Although a proprietor may do with his estate whatever he pleases, still he can not make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him” (Article 667), other than inconvenience not amounting to real damage. Article 668. And “If the works or materials for any manufactory or other operation, cause an inconvenience to those in the same or in the neighboring houses, by diffusing smoke or nauseous smell, and there be no servitude established by which they are regulated, their sufferance must be determined by the rules of the police, or the customs of the place.” Article 669.
 

 Clearly, therefore, the plaintiffs’ action is not one in tort, but, rather, one that springs from an obligation imposed upon property owners by the operation of law so that all may enjoy the maximum of liberty in the use and enjoyment of their respective properties.
 

 Winfield in his Textbook of the Law of Tort traces the historical development of the law of nuisance and negligence, pointing out that while these two were formerly confused and there was “Until quite recently * * * a hybrid action of nuisance and negligence,” there is now “a strong judicial tendency to exercise the ghost of action upon the case for negligence from the action of nuisance.” In distinguishing the two he says: “In negligence the plaintiff must prove that the defendant was under a legal duty to take care. In nuisance this is unnecessary; all that the plaintiff need show, in order to make out a claim prima facie is that he has been injured by the defendant’s conduct. He starts with the presumptive rule in his favour that every man is bound so to use his own property that he does not injure his neighbor. The burden is on the defendant to establish some appropriate defense.” And, as expressed in American Jurisprudence, “Nuisance and negligence are different in their nature and consequences. To render a person liable either on the theory of nuisance or negligence there must be some breach of duty on his part. But liability for negligence is based on a want of proper care, while, ordinarily, a person who creates or maintains a nuisance is liable for the resulting injury to others regardless of the degree of care or skill exercised to avoid such injury.” Section 4, Page 282, Volume 39. See, also, the authorities above cited.
 

 We are not impressed by the testimony of the defendant’s experts and high railroad officials to the effect that although the defendant’s terminal facilities are not enclosed in a shed or round-house, they are' equipped with the most modern improvements known to the railroad industry for
 
 *746
 
 the suppression of smoke and are operated in a most prudent manner, with the result that the smoke condition complained of has been brought to an irreducible minimum and that there would be no greater reduction of this condition even if these facilities were placed under an enclosure, for the opinions and conclusions of these witnesses in this respect are supported by neither sound logic nor satisfactory reasons.
 

 In the McGee case we found as a fact that “The so-called smoke suppressers and fly ash suppressers now used by defendant do not prevent smoke and fly ash from invading plaintiffs’ properties,” observing, during the course of the opinion, that “While undoubtedly a round house building would protect the employees of the railroad company from the effect of cold, heat or rain, it would seem to be clear that such a building would also serve, to some extent at least, to prevent the spread of the smoke and soot emitted from locomotives fueled and refueled in the building,” and, further, that “viewing the 'matter from a common sense standpoint *
 
 * *
 
 a smoke eliminator attached to a tall central smokestack would further prevent the spread of smoke or soot from locomotives serviced in the roundhouse.”
 

 As conditions exist now, the substances emitted by the defendant’s operations are shifted unimpeded in condensed volumes by the winds toward the homes of the plaintiffs who live in the immediate vicinity. It stands to reason that a roundhouse equipped with a smoke eliminator attached to a tall central smokestack would tend to diffuse and spread those substances not eliminated more evenly over a much larger area with the result that a smaller portion would reach the several properties in the area. Such amounts as were not thus eliminated or spread out would be more in the nature of those damages that, instead of being substantial, are consequential, unavoidable, and remote and, 'therefore, damna absque injuria, within the meaning and contemplation of the rule of law, to be submitted to by the community as a whole for the common good.
 

 Moreover, aside from this common sense point of view, we think it is demonstrated by the testimony of the defendant’s own experts, despite their efforts to show roundhouses and sheds are for the exclusive protection of the locomotives and employees from the weather, that a conclusion may be fairly drawn from the evidence as a whole that the enclosure of such facilities is also to protect the adjacent property owners from the damaging effects of the smoke and other obnoxious substances emanating from the operation of the locomotives at the railroad terminals, for these facilities are generally so enclosed. To illustrate, the assistant to the vice-president and general manager of the operating department of the defendant, whose duties include the supervision of all switching operations in terminals and the distribution of locomotives, and who also supervised
 
 *748
 
 the installations made -at the Bossier terminal for the suppression of smoke, testified that although the Illinois Central System operates in 14 states, covers approximately 7,000 miles, and has approximately 53 terminals that are under his supervision, they "have had more complaints from Bossier City than we have had in the whole United States; that is all of the states that the Illinois Central runs through." He said a lot of the round-houses throughout the south do not have any sheds, but he did not náme any place where this condition exists. On re-direct examination he intimated a number of the defendant’s terminals operate without the benefit of a shed, bat he named only one place, a town in Illinois of approximately the same' size as Bossier City, where such is the case, and '■■hen he did not describe the locality around this facility or say whether it is located in a populous part of the city or on its outskirts.
 

 Under these circumstances we are unable to differentiate this case from the McGee case from either a legal or factual standpoint and conclude that the terminal facilities as operated by the defendant in Bossier City during the time involved in this case constituted a nuisance and that it is, consequently, liable for all damages resulting therefrom.
 

 In support of its contention that allowing damages in this case would be tantamount to taking the defendant’s property without due process of law, no authority has been cited and we can think of none. In view of the authorities above referred to, we think the converse is true, that is, to allow the defendant to continue to damage the property of the plaintiffs and gradually destroy the same, as well as to continuously emit substances that are injurious to their enjoyment thereof, without compelling it to compensate them therefor, would amount to the appropriation or taking of the property of the plaintiffs without due process of law as we understand the applicability of that law.
 

 The defense that the claims of the plaintiffs are barred by the prescription of one year is equally without merit for the evidence unmistakably shows that the operating cause of the injury is a continuous one, giving rise to successive damages from day to day, and, under our law, in such cases prescription, whatever the length of time, has no application. Werges v. St. Louis C. & N. O. R. Co., 35 La.Ann. 641; Di Carlo v. Laundry & Dry Cleaning Service, 178 La. 676, 152 So. 327; McCoy v. Arkansas Natural Gas Co., 184 La. 101, 165 So. 632. A careful study and analysis of the cases relied on by the railroad (Spyker v. International Paper Co., 173 La. 580, 138 So. 109; Rhodes v. International Paper Co., 174 La. 50, 139 So. 755; Young v. International Paper Co., 179 La. 803, 804, 155 So. 231; and Parro v. Fifteenth Oil Co., La.App., 26 So.2d 30) will show ■that although the damages complained of in those cases were progressive, the oper
 
 *750
 
 .ating cause of the injury was not a continuous one of daily occurrence.
 

 This leaves for our consideration the defendant’s contention that the plaintiffs having “completely and utterly failed to offer ■any evidence whatever to support' the specific claims for damages asserted in the petition, in discharge of the legal burden •of proof placed upon them to establish that evidence by preponderance of testimony, the Court is without right to arbitrarily determine what part of all of the cost of complete repapering, repainting, rescreening and refinishing o'f the floors * * * may have possibly been occasioned by reason of any smoke, soot, cinders or fly ash from defendant’s operations, as compared with the part thereof attributed to ordinary wear and tear from use over the period of four or five years.”
 

 Having concluded that the damages suffered by the plaintiffs are real and substantial, the trial judge, under the express provisions of Clause 2 of Paragraph 3 of Article 1934 of the Revised Civil Code was vested with discretion in assessing damages. Schmidt v. City of New Orleans, 160 La. 281, 107 So. 110. See, also, Angelloz v. Humble Oil & Refining Company, 196 La. 604, 199 So. 656. And from our appreciation of the facts and circumstances as disclosed by the voluminous mass of testimony, we cannot say that the trial judge’s awards in this case are excessive.
 

 For the reasons assigned, the judgment appealed from is affirmed, at the cost of the appellant.