The plaintiffs, Mr. and Mrs. James E. Kelly and Francis E. Bickford, alleging that they are the owners of certain properties in the Town of Covington, Louisiana, brought this suit against the defendant, Ozone Tung Cooperative, seeking damages and the abatement of a nuisance which the plaintiffs allege the defendant has been maintaining in connection with the operation of its tung oil plant in the Town of Covington.
Plaintiffs allege that the defendant's plant is operated in a tortious and negligent manner in that in said operation the tung dust, which plaintiffs claim is a vile, noxious and poisonous substance, is discharged in clouds into the atmosphere and settles upon their property in great volume. The Kellys further allege that the said dust infilitrates into their homes and store, polluting the atmosphere and settling in great volumes upon the roof, outside, inside, floors, furniture, fixtures and stock, rendering their property unfit in which to live and practically ruining their stock of merchandise in the store; and that they cannot open their windows or doors and cannot use their porch while this operation, which is practically continuous, is going on; that they have suffered hardships, physical and mental sufferings, and that their property has become worthless. The plaintiff, Mrs. Kelly, further claims that her health has become permanently impaired and her respiratory organs have become seriously affected and that she has suffered constantly from asthma due to this dust and that her physical and nervous systems have been seriously and permanently impaired. Plaintiff Bickford alleges that it is a physical impossibility to hang out the laundry and washing on his property on account of the said dust covering the same and rendering it so dirty and filthy that re-laundering is necessary, in addition to rotting and destroying the fibers of the said laundry. He further alleges "that the said noxious dust has so settled upon his house as to render the same filthy and dirty to a degree that the said noxious dust penetrated into the said house, covering the furniture, and that it is necessary to keep all doors and windows closed at all times, and that while this said plant is in operation, the porches, etc., of the house cannot be used."
The plaintiffs set forth their damages, as follows:
Mrs. Sarah Schwartz Kelly: Pain and suffering, $5,000; Worry, discomfort and inconvenience, $5,000; Damages to her respiratory, nervous and physical systems, $5,000; total $15,000.
James E. Kelly: Bills of doctors, incurred and to be incurred, $250; Mental and physical pain and suffering, $2,500; Repainting of store, home and tenant house, $600; Cleaning of same, $250; Damages to screens and replacing thereof, $250; Discomfort, inconvenience, worry and annoyance, $2,500; Depreciation of the value of property, $3,000; Total, $9,300.
Francis E. Bickford: Washing, cleaning and re-painting home, $800; Mental and physical anguish, $1,000; Total, $1,800. The three plaintiffs have prayed for a monied judgment in the amounts above set forth and for an injunction prohibiting the defendant from operating its plant in such a manner as to give off and discharge into the atmosphere the foul and noxious dust complained of.
The defendant filed an exception to the citation, which was cured by a proper citation. Thereafter the defendant filed exceptions of misjoinder of parties plaintiff and of vagueness, which exceptions were overruled. These exceptions are abandoned. Defendant in answer denied all the material allegations of plaintiffs' petition. Defendant, in further answer, set forth that it established its tung manufacturing plant in the Town of Covington in the year 1938; that the manufacturing process of this mill consisted of the extraction of oil from tung nuts; that in the year 1946 it built an addition to this plant which was known as a hammer mill which pulverized the tung nut hull, a waste by-product prior thereto, into a fine powder which is used as a base for fertilizer. The answer of the defendant further sets forth that prior to the construction of the hammer mill, the hulls were dumped on the outside of the mill, allowed to be taken away by the members of the defendant cooperative, or allowed to rot or be burned, causing dust to be emitted, *Page 839 
without complaint from the plaintiffs, Kellys; that when this hammer mill was first put in operation it was impossible to prevent the emission of some dust, but not any more than prior thereto, and not in sufficient quantities to cause these plaintiffs any real inconvenience. Defendant further set forth that after complaints were made by the Kellys, certain corrections were made in the operation of the mill which prevented the dust escaping therefrom and getting into the property of these plaintiffs. Defendant further set forth that these improvements were made prior to the filing of this suit. Accordingly defendant prays for a dismissal of plaintiffs' suit.
After a trial of the suit on the merits, the trial judge, for written reasons assigned, found as a fact that the improvements constructed by the defendant had abated the emitting of the dust prior to the institution of this suit. He allowed to Mr. and Mrs. James E. Kelly each the sum of $150, for the worry, discomfort and inconvenience suffered by them, and to Mr. James E. Kelly the further sum of $50 as damages to the screens of his house. He disallowed all other damages sought by them. As to plaintiff Bickford, he allowed him the sum of $75 for the worry and inconvenience suffered by him, disallowing his claim for damages for washing, cleaning and repainting his home. He rendered and signed a judgment in accordance with his written reasons; first, denying the application for a writ of injunction; second, granting the sum of $200 to Mr. James E. Kelly; third, granting the sum of $150 to Mrs. Sarah Schwartz Kelly, wife of James E. Kelly; fourth granting the sum of $75 to Francis Bickford; fifth, taxing the sum of $50 each, as expert fees, to Cecil Shilstone, Dr. Warren H. Rinehart and Dr. Vincent J. Derbes; and, sixth, taxing all costs to defendants. Plaintiffs filed a motion for re-hearing which was refused. Plaintiffs have devolutively appealed. The defendant has answered the appeal, praying that the judgment be reversed in so far as allowing the plaintiffs a monied judgment, and fixing the expert fees and taxing all costs, and that there now be judgment in its favor, dismissing plaintiffs' suit in its entirety, with costs.
[1, 2] Before discussing the merits of the case, it might be well to state that the claims of each of the Kellys is far in excess of the jurisdiction of this court, and these claims do not involve physical injuries. On the face of the record, it would be our duty to dismiss the appeal as to them on our own motion, or transfer it to the Supreme Court. At the time of the taking of the appeal, a remittitur upon all property claims in excess of $2,000 was entered on behalf of Mr. Kelly. In this court, Mrs. Kelly only seeks an award as "substantial damages for her physical pain and suffering" and a substantial increase of the award of $150 granted to her for worry, discomfort and inconveniences. Mr. Kelly's demand is that the awards of $150 to him for physical pain and suffering and worry and inconvenience, and "$50.00 for damages to screens and the inconvenience and annoyance occasioned thereby should be substantially increased". According to the Supreme Court in the case of Wagner v. New Orleans Ry. Light Co., 151 La. 400, 91 So. 817, in determining the question of jurisdiction, this court can look into the record to ascertain the real amount in the dispute and is not bound to accept the allegations of the petition. An examination of the record shows that the claims of the Kellys are highly inflated, and it is apparent that the greatest possible amount that may be recovered by each of the Kellys is less than $2,000, as seems conceded by the attorneys on both sides, which is within our jurisdiction. Under these circumstances, we shall retain the jurisdiction of the case and consider the merits of the case.
Since the plaintiffs, in this Court, do not complain of the action of the trial judge in refusing to issue the writ of injunction prayed for, the only question before us is the correctness of the trial Judge's action in awarding damages and the amounts thereof.
The evidence shows that the plaintiffs, Mr. and Mrs. Kelly, own a combination store and residence and a certain small tenant house in the Town of Covington, at the southeast corner of 27th Avenue and Jackson Street, which combination store and residence is about 200 feet southeast *Page 840 
of defendant's plant. The residence of plaintiff Bickford is at the northeast corner of 26th Avenue and Jackson Street, and about one hundred feet south of the Kellys or about 300 feet southeast of defendant's plant. The defendant's plant is at the northwest corner of 27th Avenue and Jackson Street. The streets abutting these properties are dirt streets and are heavily travelled; during dry weather vehicles which travel these streets occasion considerable dust. The section immediately surrounding the properties of the litigants in this suit is industrial in character and in fact constitutes the principal industrial area of Covington. The Gulf, Mobile and Ohio Railroad runs down the center of 27th Avenue, and besides defendant's plant there are two sawmills, a turpentine plant and several bulk oil stations in the immediate vicinity.
The evidence further shows that the defendant's tung oil mill was constructed in 1938. At that time, the plaintiffs Kelly were residing at their residence described above, and made no complaints as to its operation. Prior to November, 1946, defendant constructed a hammer mill for the purpose of crushing the tung nut hulls into a fine powder which was used as a base for fertilizer. The defendant began to operate this hammer mill in the early part of November, 1946, and it is the operation of this hammer mill which plaintiffs contend created the dust which caused the damages complained of. In November, 1946, the Kellys registered a complaint as to the dust created by the operation of the mill with the defendant. On December 4th, 1946, on complaint of Mrs. Kelly, Mr. Warren H. Reinhart, Acting Chief, Section of Industrial Hygiene of the State Board of Health, investigated defendant's plant. According to his report of his investigation, he found a small amount of dust was issuing from the dust collector, but did not appear sufficient to justify any complaints. However, he found considerable dust on the roof around the cyclone dust collectors. The manager of defendant's plant admitted that 3 or 4 times during the night shift, through inexperience or carelessness, the bin outlet had become plugged and considerable dust was expelled. Effort was being made to prevent a recurrence. The accidental discharge of dust from the collectors was apparently ample justification and possibly the only cause for complaint. The manager promised to repair one leak which was found in the collector. The examiner further found that the dust collectors were a standard method of control and consequently the only recommendation he made at that time was for a strict supervision of their operation.
Upon additional complaints of the Kellys, on January 2, 1947, there was a meeting held at the Parish Health Unit, at which meeting there were present members of the Health Unit, Mrs. Kelly, the Mayor of Covington, officers and members of defendant company and Mr. Reinhart. The chief complaint seems to have been the carloading of the finished product of the crushing of the hulls. After considerable discussion, it was decided to contact the company that installed the equipment and a recheck of the operation with Mr. Reinhart. On January 17, 1947, in accordance with the recommendation of the January 2nd meeting, Mr. Reinhart visited the mill with Mr. Rogers, representative of the company which installed the equipment. The result of this visit, which was while the hammer mill and carloading operations were active, was the recommendation of various changes.
It appears from the evidence that practically all of the recommendations made by Mr. Reinhart and those of Messrs. Reinhart and Rogers were carried out. The defendant contends these recommendations were carried out around January 19th and that thereafter its plant did not emit dust in sufficient quantity to cause damage to any one. The suit was filed on February 17, 1947, and was tried in May of the same year. Although plaintiffs admit that conditions had been considerably improved, they still maintain that the defendant's plant was a nuisance and was causing them substantial damage.
This is a factual case. It is not necessary to take up and discuss the testimony of each witness or the reports of the several experts offered in the case. The trial judge who saw and heard the witnesses *Page 841 
reached the conclusion that immediately after the defendant began the operation of the hammer mill which was in November, 1946, there was a dust emitted from the mill in sufficient quantities to cause considerable inconvenience and property damage, which said dust came from the two cyclone dust collectors on top of the plant and that this condition was corrected by inclosing the dust collectors with tar paper. Although the trial judge found that this condition was corrected the latter part of January or the first part of February, we find that the condition was corrected after Mr. Reinhart's inspection of the plant and prior to the meeting of January 2d 1947. The trial judge further found that "when freight cars were loaded with fertilizer by means of a blow pipe which was used for this purpose, the dust was blown from the car and settled on and in the buildings of these plaintiffs. At the beginning of this operation, too much air velocity was used causing dust to be blown from the car, but the evidence shows that it was subsequently cut down and, in addition to this, burlap bags were used to close the openings on the car, thereby preventing the dust from escaping." We find that, according to the evidence, this correction is in line with Mr. Reinhart's recommendations of January 17, 1946, and is in corroboration of defendant's plant managers' testimony that such correction was completed about January 19, 1946. As shown by his written reasons for judgment, the trial judge made a personal visit to defendant's plant while it was in operation and not only examined the dust collectors on the top of the building to see if the dust was being emitted, but he also observed the loading of a freight car with the dust or fertilizer. He also visited the premises of the plaintiffs. He sums up the result of his visit in these words: "The dust collectors were inclosed with tar paper and I not only failed to see an accumulation of dust around them on the roof but I failed to see any dust going into the air from said collectors. As a matter of fact the way it looked to me it was impossible for the dust to escape through the tar paper surrounding the collector. The dust was blown through a pipe into the freight car in order to load it and the door on the side of the car on which the loading was done was closed with the exception of a small opening to admit the blow pipe. The door on the other side of the freight car was boxed up about two-thirds the way up in order to prevent the dust from escaping. I did note that in the one-third space that was not closed a slight amount of dust came from the car and certainly could not have caused any real damage to the surrounding property owner. In addition to visiting the plant of the defendant, I also visited the combination store and residence of the plaintiffs, Kelly, and the residence of the plaintiff, Bickford. While it is true there was some dust in the store of the plaintiffs Kelly, the merchandise that was on the shelf looked just as clean to me as the merchandise found on the shelf of any store and was far cleaner than the merchandise which was offered in evidence by the plaintiffs, Kelly, in this suit. Further than this, I looked at the screening around each house as well as the wood work and while it is true, there is some evidence of this tung dust having gotten on the property, I am sure that the tung dust was deposited prior to the corrections in defendant's plant which have been heretofore mentioned. I might further add that the exterior of the buildings of these plaintiffs did not look any worse to me than the exterior of any building situated on two dirt streets and which had not been painted for a period of three years. Of course there was some dust on the exterior as well as the interior of the building but I am satisfied that the vast majority of this dust was caused by vehicles traveling the dirt streets immediately adjoining the building."
The trial judge found that the dust emitted by defendant's operation was of sufficient amount to cause the Kellys a real injury to the screens of their property and inconvenience in the enjoyment of their property. As stated before, he allowed to each of the Kellys an award of $150 for the worry, discomfort and inconveniences.
[3] In the case of Labasse v. Plat, 121 La. 601, 46 So. 665, the court stated that personal discomfort and annoyances resulting from a nuisance is the primary consideration in allowing damages, although there is no arithmatical rule for their estimation. *Page 842 
There is in such cases an injury, the extent of which the jury or the court may measure. See also McGee et al. v. Yazoo M. V. R. Co., 206 La. 121, 19 So.2d 21; Devoke et al. v. Yazoo 
M. V. R. Co., 211 La. 729, 30 So.2d 816.
[4, 5] Under the facts of this case, the defendant, upon complaint being made by the Kellys, attempted to correct the condition of its mill and its operation. It was within the trial court's discretion to measure the damage suffered by these plaintiffs. We cannot say that he erred in his conclusion that plaintiffs had suffered a real injury nor can we say that he underestimated the damages. We feel that the amount allowed is adequate.
[6] He disallowed damages to Mrs. Kelly for her alleged pains and suffering from the asthma which she contends she contracted as a result of breathing the dust eminating from the defendant's mill. After a review of the evidence relating thereto, the trial judge, in his written reasons for judgment comes to the conclusion that her asthmatic condition was not attributable to the dust emitted by the mill. She complains of his conclusion. After a careful review of this voluminous record, we are convinced that she has not proven that her asthmatic condition was caused by the dust. In any event, on this question of fact, we do not see any manifest error in the conclusion of the trial court.
[7] As to plaintiffs Kellys' demand for an increase in the damages allowed for the screens, we feel, like the trial judge, that it is very ample. He allows this amount for the purpose of replacing two or three screens and the cleaning of the remainder. The evidence is not clear that it was this dust which caused these screens to deteriorate. Our impression is that these screens were old screens, affected by the common dust of the streets and the elements of time.
[8] As to the amount of $56, being the medical fees and drug bills expended by Mr. Kelly, these expenses were incurred for the treatment of Mrs. Kelly for her asthmatic condition. Since there exists no causal connection between her condition and the emitting of the dust, this item was properly disallowed.
[9] We agree with plaintiff's contention that the trial court should have allowed to Dr. L.E. Jordan an expert fee of $50 as he allowed the three experts called by the defendant, and we will allow the expert fee to Dr. Jordan.
[10] As to plaintiff Bickford, the evidence shows that he moved into the house he is occupying as his residence on December 30, 1946, so he could take possession of it on January 1, 1947. He purchased the property on January 18, 1947. At the time of the purchase of the property, he was well aware of the condition then existing. Furthermore, the two cyclone collectors on the roof had been enclosed. The remaining condition was being remedied. Consequently the dust then emitting could not have been very consequential, and therefore he could not have been bothered, if any, by any dust emitting from defendant's plant. We are of the opinion that the rule of "damnum absque injuria", an injury without a remedy, applied. His claim will be disallowed.
For these reasons, the judgment appealed from is hereby reversed, annulled and set aside in so far as it awards the sum of $75 to plaintiff Francis E. Bickford, and accordingly it is now ordered that the claims of the said Bickford be disallowed and his demand rejected.
It is further ordered that the judgment appealed from be amended by the allowance to Dr. L.E. Jordan an expert fee of $50 to be taxed as costs.
It is further ordered that the said judgment be further amended by providing that all costs of the lower court be paid by the defendant and plaintiff Francis E. Bickford in the proportion of 2/3 by defendant and 1/3 by plaintiff Bickford. It is further ordered that the said judgment as amended be affirmed. The costs of this appeal to be paid by the plaintiffs. *Page 843