[1] Robert L. O'Neal and his wife are appealing from the judgment of the lower court dismissing the suit they instituted to enjoin the operation of the Southern Carbon Company's plant near Swartz, Louisiana, as a nuisance — in that this company in its manufacture of carbon from natural gas, allows an oily, greasy, and sooty substance to escape constantly and permeate the surrounding air in such quantities as to render living in their home in the vicinity unbearable — and also to recover the sum of $5,500 for damages to their home and for the personal discomfort and inconvenience to which they have been subjected by reason thereof.
[2] After reviewing all of the evidence that was adduced on the trial of this case, we are compelled to conclude, as did the trial judge, that the proof is insufficient to establish within the degree required by law that the defendant is operating its plant in such a manner as to constitute a nuisance, and that even though the plaintiffs are suffering personal inconvenience and a certain amount of damage to their property, they have failed to establish this damage and inconvenience resulted from the defendant's operations.
[3] It appears from the record that the home of the plaintiffs in a sparsely settled rural community near Swartz, Louisiana, built over 50 years before this suit was instituted and remodeled by the plaintiffs in 1930, is a 5-room house standing on an 80-acre tract of land, an undivided half of which is owned by the plaintiff Robert J. O'Neal. A gas field discovered in the vicinity of Monroe, Louisiana, in 1917 or 1918 was, very shortly thereafter, extended some 10 miles eastward around the town of Swartz and became known and referred to locally as the Old Swartz Gas Field. Within a few years after the discovery of this field, the manufacturers of carbon black, seeking a location for their plants in easy access to the raw materials, began the erection of carbon plants in all parts of this field. There were a large number of these plants, possibly as many as 15 or 20, and, operating as they did without the benefit of advanced engineering methods and modern equipment designed to insure correct combustion and the maximum salvage of escaping carbon particles, they emitted a smoke that was particularly black and dense. Gradually, for one reason or another, these plants have been closed down, with the result that today, in the vicinity of the O'Neal home, only two remain.
[4] One of these plants, that of the defendant company, located 4612.2 feet (over 3/4ths of a mile) to the northeast of the home of the plaintiffs, in extracting its carbon black from natural gas mixed with enriching oil, uses the "furnace" or Cottrell process, the most modern known to the industry. By this method there is produced what is known as "agglomerated" carbon black, larger in diameter than ordinary carbon black and, because of its heavier weight, not as susceptible to wind velocity, being carried for much shorter distances. In this process the black created by the incomplete combustion of natural gas and insufficient air is subsequently passed through a horizontal rotary kiln furnace where an electrostatic precipitator, known as a Cottrell precipitator, causes a great many particles of the finer carbon black to adhere to each other and form larger or "agglomerated" particles of carbon black. The oil that is mixed with the natural gas at the defendant's plant to obtain a higher grade of salable carbon black, is heated at such excessively high temperatures before it is introduced into the furnaces that it actually enters them in a vapor or gaseous form. This, coupled with the length of time they remain in the furnaces, absolutely precludes, according to the experts who testified for the defendant, any possibility of the carbon black produced in these furnaces containing oil or grease, unless there is a complete breakdown of the plant machinery. The analysis of the samples of smoke taken from the stacks at the defendant's plant, showing no sulphur content and oily material amounting to no more than 0.05%, bears this out.
[5] The other carbon plant, operated by the United Carbon Company, located 2102.45 feet (4/10ths of a mile) to the north and west of the O'Neal home, extracts carbon from natural gas by the "channel" process, which means that it operates without any cyclones or electrostatic precipitator equipment of any kind in the salvage of carbon particles, with the result that it produces a very fine carbon black that is easily blown long distances by slight wind velocity. The plaintiff Robert J. O'Neal was, at the time this suit was instituted and for some 20 years prior thereto, an employee of this plant.
[6] In addition to these two sources of contamination in the vicinity, the Missouri Pacific Railroad passes within 400 feet of the home of the plaintiffs in a semi-circular route, approaching from the west and swinging back toward the east. Mr. O'Neal himself estimated it takes a train on these tracks about 30 minutes to pass his home. And it was established as a fact that an average of 18 or 20 trains pass over these tracks every 24 hours, as many as 30 passing on some days. An analysis of the smoke emitted by the oil burning locomotives of this railroad shows its sulphur content to be relatively high and its oily content to be 16.2%. Also, in the back yard of the home of the plaintiffs, and only a few feet from their house, there is an open gas flare 18 to 30 inches high that, although not burning constantly, has discharged such appreciable amounts of carbon black into the air the south and east walls of the house clearly bear stains from it. A fifth source of pollution, though not emitting any carbon black, is a dirt and a gravel road in close proximity to the home of the plaintiffs, the gravel road connecting the two carbon plants and the dirt road leading to the home of the plaintiffs from this gravel road.
[7] The plaintiffs concede the nuisance and injury to which they have been subjected was caused by these several sources of pollution and that the evidence fails to show the extent to which their injury is traceable directly to the defendant's plant, but contend the defendant company is, nevertheless, liable because the record does show they have suffered damages from some source and that the defendant's operations have contributed to at least some of this injury; consequently, as a joint tort-feasor with the others contributing to the injury recovery may be had against the Southern Carbon Company since its liability in this respect is solidary.
[8] Clearly there is no merit to this contention. When this case was before us previously on the appeal the plaintiffs took from a judgment dismissing their suit on exceptions of no cause and no right of action that were levelled at the fact they had failed to allege in their petition the injury they had suffered resulted from the negligence of the defendant, as required in all tort actions, we overruled these exceptions and remanded the case to the lower court for trial on the merits, holding that recovery in such cases does not depend upon a question of negligence, but, instead, springs from the obligations the law imposes upon property owners. These obligations are expressed, in part, in the following language in the Revised Civil Code: "Although a proprietor may do with his estate whatever he pleases, still he can not make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him", Article 667, other than inconvenience not amounting to real damage, Article 668, and that "If the works or materials for any manufactory or other operation, cause an inconvenience to those in the same or in the neighboring houses, by diffusing smoke or nauseous smell, and there be no servitude established by which they are regulated, their sufferance must be determined by the rules of the police, or the customs of the place." Article 669. See, O'Neal v. Southern Carbon Co., 211 La. 1075,31 So.2d 216; and Devoke v. Yazoo M. V. R. Co., 211 La. 729,30 So.2d 816.
[9] For the reasons assigned, the judgment appealed from is affirmed, at the cost of the plaintiffs.