LOTTINGER, Judge.
This is a tort action wherein the plaintiff seeks to recover the sum of $2,500 for damages caused as a result of trespass to real estate. After setting forth that he is the owner of certain lots of ground in Oakdale, Louisiana, the plaintiff in his petition goes on to make the following allegations :
“3.
“That, your petitioner sold lots twenty-five (25) to twenty-nine (29) to the defendant, Stanley W. Gates and Robert Mace Brindley.
"4.
“That, on or around June 1950, the defendants, Stanley W. Gates, Mrs. Mary Osterland Gates, and Joel L. Stockman while operating the Stanley Gates Lumber Company as a partnership, took possession of lots thirty (30) and thirty-one (31) and used them to deposit trash 'and saw-dust from' the sawmill, which is located adjacent and *668 contiguous to lots thirty (30) and thirty-one (31).
“5.
“That, the defendants did not obtain oral or written consent of the petitioner, who did not lease or sell this property to the defendants.
“6.
“That on or about July, 1953, the Stanley Gates Lumber Company was Incorporated.
“7.
“That the defendant, Corporation has continued the trespass on the petitioner’s property without his consent or permission.
“8.
“That your petitioner has notified the defendants on numerous occasions to remove this saw-dust and refuse off his lots, but without avail.
“9.
“That, this action of the defendants in depositing their refuse on the petitioner’s property and taking possession of it without his permission and consent, constitutes a trespass.
“10.
“That, the trespass by the defendants to lots thirty (30) and thirty-one (31) has prevented your petitioner from selling lots sixteen (16) through twenty (20).”
The damages allegedly suffered are itemized at $1,000 for the trespass to lots thirty and thirty-one and $1,500 for loss of profits because of failure to sell lots sixteen through twenty.
The defendants Joel Stockman and Mary Osterland filed a joint answer in the nature of a general denial and, alternatively, pleaded the prescription of one, three and five years. The defendants Stanley W. Gates and Gates, Inc. likewise filed an answer in the nature of a general denial and also alternatively pleaded the prescription of one, three and five years.
Following trial on the merits in the Court below, judgment was rendered dismissing the suit as to all defendants except Gates, Inc. which was cast for damages in the amount of $500. Following an application for a rehearing the judgment was amended to allow legal interest from Judicial demand rather than August 2, 1955 (the day the suit was filed), and the matter is now before us on an appeal taken by the defendant Gates, Inc. The plaintiff has neither appealed nor answered the appeal.
At first we were concerned with whether we had jurisdiction to entertain the appeal, but a reading of the record has. convinced us that the plaintiff’s demands, are considerably inflated (as will be pointed' out hereinafter), and therefore, we are-vested with appellate jurisdiction.
The trial judge rendered written reasons, for judgment wherein he observed, in part, as follows:
“Defendants Joel Stockman and Mrs. Mary Osterland Gates filed general denials. There was no evidence introduced which would even suggest that these two parties are responsible and, therefore, the suit is dismissed in so far as these two parties are concerned.
“Stanley W. Gates and the Gates, Inc. filed general denials and affirmatively alleged that prior to the trespass. Stanley W. Gates made a tentative deal to purchase the lots from the plaintiff;, that ‘temporarily there possibly was a. possession taken under this deal, but-that the said deal was never closed, and respondents immediately moved from said property, and leveled the-same.’ Defendants Stanley W. Gates- and Gates, Inc. alternatively plead prescription of one, three and five years.
*669 “As of July 31, 1953, Stanley W. Gates conveyed his interest in the mill to the corporation, Gates, Inc. Therefore, any right of action against him prescribed on July 31, 1954. This action was not filed until August 2, 1955, therefore, Stanley W. Gates is relieved from all liability.
“The evidence conclusively shows that the defendants Stanley W. Gates and Gates, Inc. trespassed on plaintiff’s lots numbered 30 and 31 of the Herbert Ratier Subdivision to the Town of Oakdale, Louisiana. These lots are separated from five lots owned by the defendant (lots 25 through 29, inclusive) by a 60-foot street. The Lumber Mill owned first by Stanley W. Gates and then since 1953 by Gates, Inc. occupies these five lots. A blow pipe from the lumber mill was erected on these lots so that the sawdust was blown across the street and onto lots 30 and 31. Reference to the plat of survey which is filed in evidence as P-2 shows that a railroad track goes along the south edge of lots 30 and 31. The evidence further discloses' that many banding irons from box cars were dumped on lot 31. Although it was not conclusively shown that defendant or defendant’s agents placed these banding irons on plaintiff’s lot, there was no other reasonable explanation for their presence. This, however, is not sufficient proof to show that defendant placed the banding irons on plaintiff’s property. On December 31, 1954, Gates, Inc. stopped operation of its mill ánd, therefore, that would be the last day that sawdust was blown on plaintiff’s property. This action was filed August 2, 1955, within less than one year after the Gates, Inc. mill stopped operations. Since this trespass was a continuing trespass through December 31, 1954, the cause of action is not barred by one year prescription. Devoke v. Yazoo & M. V. R. Co., 211 La. 729, 30 So.2d 816 and cases cited therein.
“Since February, 1955, a great deal of sawdust has been hauled away from plaintiff’s property. Still there remains some 5 to 12 feet covering a good portion of plaintiff’s lots. The two lots in question were appraised at $250.00 each by Mr. W. E. Bacon, Manager of the Calcasieu-Marine National Bank in Oakdale. One of the witnesses testified that the sawdust could be pushed off plaintiff’s lots for a cost of $25.00. He did not explain where the sawdust could be pushed nor did he satisfactorily explain the method by which this operation could be handled. There is no question but that defendant well knew that it was trespassing on plaintiff’s property. It is also clear that plaintiff requested on three separate occasions that defendant remove the sawdust. To this date defendant has not heeded plaintiff’s request. This unlawful entry made by defendant on plaintiff’s premises constituted an offense for which the defendant is answerable in damages. See Revised Civil Code, Article 1934.”
* * * * * *
“Plaintiff contended that defendant’s trespass on lots 30 and 31 prevented him from selling lots 16 through 20 of the same subdivision. The plat (P-2) shows that these four lots are located to the north of lots 30 and 31 and are separated from the said lots by a street 60 feet wide. (See plat marked P-2, which was filed in evidence). The evidence showed that on some occasions the sawdust pile was burned which caused cinders and soot to blow on the neighboring lots and the smoke was obnoxious to surrounding owners. This being the case it was understandable that the trespass by defendant had some effect on plaintiff’s ability to sell, particularly lots 17 and 18 and possibly lots 16 and 19.”
*670 The factual findings of the trial judge as to what transpired are amply supported by the record and the only question to be decided by us concerns the matter of •quantum. It is evident -from the trial judge’s reasons for judgment that in assessing the damages suffered by plaintiff he •took into consideration his ability to sell lots Sixteen through Nineteen. In this respect we think he erred, for the record contains the testimony of the plaintiff himself to the effect that he refused to sell Mr. Gates lots sixteen through twenty. His testimony in this respect is as follows:
“Q. Have you turned down any offers to sell that property? A. I have.
“Q. Then, actually, Herbert, isn’t it a fact that you have stated the opinion that you didn’t want to sell the property? A. To Mr. Gates.
“Q. Has Mr. Gates tried to buy it from you ? A. He tried to buy it.
“Q. Hasn’t he tried to buy it continuously for about five years ?' A. He tried.
“Q. And you have— A. I refused him.
"Q. You wouldn’t even make him a price? A. I wouldn’t even make him a proposition.
“Q. But, yet, you tell the court you lost $1500.00 because you couldn’t sell the property? A. I don’t know, you kind of got me crossed up on that.”
******
“Q. Then, actually, you have had an •opportunity to sell your property? A. To Mr. Gates.
“Q. Uh-huh, but you wouldn’t make bim a price at all ? A. No.
“Q. And you didn’t make him a price because you just didn’t want to sell it to him? A. Not to him.
“Q. Not to him. Yet, you lost '$1500.00 because of your inability to sell those lots? A. That’s right. That’s right.”
Omitting from consideration Lots Sixteen through Twenty, there is left only the question of the diminution of value of Lots Thirty and Thirty-one. A Mr. W. E. Bacon, manager of the Oakdale Branch of the Calcasieu-Marine National Bank testified that in his opinion the lots themselves were of a value of only about $250 each, a figure which is in line with evidence introduced concerning other lots in the neighborhood.
In view of the,above and foregoing we are satisfied that the award of the trial judge is excessive and should be reduced.
It is, therefore, ordered, adjudged and decreed that the judgment appealed from be and the same is reduced to $250; in all other respects, to stand affirmed.
Judgment amended and as amended affirmed.