LOTTINGER, Judge.
This is a suit by South Central Bell Telephone Company (Bell) against Texaco, Inc. and several other defendants[1] for damages to underground cables caused by leaking gasoline. From a judgment maintaining an exception of prescription[2], Bell has appealed.
Suit was filed on October 16, 1975. All parties agreed that Bell had notice of damage to its telephone cables prior to one year of filing of suit.
Bell maintains a nine duct conduit containing several telephone cables which run along Brashear Avenue in Morgan City. The splices for these cables are located in a manhole near the corner of Brashear and Sixth Street. The manhole is used as an access to service upon the splices, cables and wire pairs. Texaco and Shell service stations are located at the intersection of these two streets. Bell claims that leaks from the underground storage tanks of these stations caused an accumulation of gasoline in the manhole. Bell further alleges that this accumulation of water and gasoline in the manhole caused the deterioration of polyethylene sheaths covering Bell’s telephone cables. As a result of this deterioration, air pressure maintained within the cables caused the softened sheaths to rupture, allowing water to enter the cable and thereby interrupt service to customers. Bell was forced eventually to totally replace all of the cable in the conduit line along Brashear Avenue. Bell filed suit for the repair cost and estimated cost of replacement of the cable.
As early as November of 1971, service employees of Bell began to notice an accumulation of water and gasoline in the manhole at Sixth and Brashear. The gasoline in the manhole necessitated the replacement of one cable in December of 1972. Bell began the practice of pumping gasoline out of the manhole on a month to month basis in 1973 and 1974. This pumping was done to prevent further gasoline damage to the cable in the conduit run along Brashear *432 Avenue. In February of 1974, an additional manhole near the one in question was built by Bell in order to prevent gasoline contamination within the duct runs from occurring in other areas. During the latter part of 1974, the Bell plant manager in Morgan City determined that all of the cable in the subject manhole and the duct runs between Sixth and Seventh Streets along Brashear had been damaged beyond repair, and that total replacement of the cable was neces-saiy.
The trial court held that gasoline slowly consuming polyethylene sheath cables over an extended period of time constituted a continuing tort, citing Devoke v. Yazoo & M.V.R. Company, 211 La. 729, 30 So.2d 816 (1947). Thus the trial court concluded that the fact that Bell had notice as early as 1971 that gasoline in the manhole was damaging its cables was not controlling. Citing D’Albora v. Tulane University, 274 So.2d 825 (La.App. 4th Cir. 1973), writs denied, 278 So.2d 504 and 505 (La.1978), the trial judge held that where there is a continuing tort present there is no multiplicity of causes of action and of prescription accrual dates; there is only one cause of action and one prescription period which runs from the date of the last part of the damage done. The trial judge found as fact that the last part of the damage to the cable was completed in September of 1974, more than one year prior to the filing of suit.
On appeal, plaintiff-appellant Bell alleges the following specifications of error:
1. while the trial court correctly found that the continuing leakage of gasoline and exposure of the cables to the gasoline constituted a continuing tort, the court erroneously concluded prescription commenced running while gasoline continued to contaminate the cables, and
2. assuming arguendo that the trial court was correct in its application of law, the trial court committed error in finding that damage was complete more than a year before suit was filed.
ERROR NO. 1
Bell argues that under the theory of continuing tort, prescription does not commence to run as long as the cause of the damages remains unabated. Thus, Bell contends prescription on its claim for damages to the underground cables could not have begun to run as long as gasoline leaks continued to get into the conduit system.
The “continuing tort” theory as an exception to La.C.C. arts. 3536 and 3537[3] was discussed by the Supreme Court in Devoke v. Yazoo & M.V.R. Co., supra. In Devoke, the Supreme Court held that an action by property owners against a railroad for damages resulting from the operation of terminal facilities in such a way that dense smoke, soot, cinders and ash were dispersed was not barred by prescription, since the cause of the injury was a continuous one giving rise to successive damages day to day. This court followed Devoke in Landry v. Pierre Part Natural Gas Company, Inc., 344 So.2d 412 (La.App. 1st Cir. 1977). In D’Albora v. Tulane University, supra, the Fourth Circuit held that in the context of a *433 continuing tort, prescription runs from the date the last part of the damage is done. The reasoning is obvious; once the damage has been done, there is no justifiable reason not to commence the running of prescription.
The basis for Bell’s contention that prescription did not commence as long as the gasoline leak continued is that the victim of a continuing tort should not be burdened by the running of prescription as long as the wrongful conduct of the offender continues. Bell’s claim for damages is for the cost of repairing and replacing gasoline damaged cables. But, once damage occurred necessitating total replacement of the cables, gasoline seepage could no longer be considered an offending act causing successive day to day damages. The fact that gasoline leakage continued into the Bell manhole and conduit is immaterial since the cables had already become ruined. A continuing tort contemplates a day to day offending act causing day to day damages. Once the claimant has incurred all of the damage it will eventually suffer, then vis-a-vis that claimant, the act is no longer offending.
This Court holds, in accordance with D’Albora, that in the context of a continuing tort, prescription runs from the date the last part of the damage is done. Thus, we agree with the trial judge that the factual determination as to when final damage by gasoline was done to the Bell cable is the controlling factor.
Bell cites Wilson v. Hartzman, 373 So.2d 204 (La.App. 4th Cir. 1979), writ refused 376 So.2d 961 (1979) in support of its contention that in a continuing tort situation, prescription does not commence to run until the continuing cause of the damage is abated. Wilson does not conflict with our holding in this case. In Wilson, at no identifiable time could the plaintiff have been said to have sustained silicosis from the wrongful exposure to silica dust. Thus, each daily exposure was a continuing wrongful act.
Additionally, our holding does not, as argued by plaintiff-appellant, render continuing tort an irrelevant category. There is ample evidence in the record to indicate that Bell had knowledge of damage to its cable as early as November of 1971. In fact, as early as 1972, Bell had to replace an entire cable whose sheath was ruined by gasoline contamination. Thus, were this court to hold that gasoline consuming polyethylene sheathed cables was not a continuing tort, then Bell’s claim for damages would have long since prescribed.
For these reasons, we find this assignment of error to be without merit.
ERROR NO. 2
Bell argues that the trial judge erred in concluding that the last part of the damage done by the continuing tort was consummated by September of 1974, despite the continuance of leaks from the Texaco tanks at least as late as October 17, 1974, and from the Shell tanks until after suit was filed, and despite the continued functioning of the cable until after suit was filed. Bell argues that this holding by the trial judge was not supported by the evidence. We disagree.
The trial judge in his written findings of fact and reasons for judgment relied heavily on the deposition of Herbert Leitz, the plant manager of Bell in Morgan City. The trial judge found as fact that Leitz’s decision to replace all of the cables in the conduit was made in September of 1974. Though the cables were still functioning and would continue to function, the polyethylene sheaths were damaged beyond repair so as to mandate a decision, at that point in time, that the cables would have to be replaced.
Our duty as an appellate court is to carefully study and review the entire record to determine “that the record establishes that the finding [of fact] is not clearly wrong (manifestly erroneous).” Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). This we have done and are convinced that the “evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court’s finding.” The “evaluations and *434 inferences” of the trial court are reasonable. Canter v. Koehring Co., 283 So.2d 716 (La.1973). Thus we find no error in the trial judge’s conclusion that the damage was consummated as of September of 1974.
Therefore, for the above and foregoing reasons, the judgment of the trial court is affirmed at the plaintiff-appellant’s cost.
AFFIRMED.

. Named as defendants in addition-to Texaco, Inc. are Shell Oil Company, Billups Bayou Oil Corporation, Matile Dragna, Mrs. Mary Drag-na, Sam Sircusa, Joseph Sircusa, Matt Pictag-gio, Pictaggio’s Estate, Jack Williams, and Lucien Cutrera. All defendants are alleged to be either the owners, operators, lessors and/or lessees of the service stations involved, or the owners, lessors, and/or lessees of the land upon which the service stations are located. By supplemental petition McKerall Oil Company, Inc., the Shell distributor in Morgan City, was made a defendant.

. Shell, Billups, Matt Pictaggio, Pictaggio’s Estate and Jack Williams were dismissed by motion of the plaintiff. All of the remaining defendants filed the peremptory exception of prescription.

. Articles Nos. 3536 and 3537 provide:
Art. 3536. Other actions prescribed by one year. The following actions are also prescribed by one year:
That for injurious words, whether verbal or written, and that for damages caused by animals, or resulting from offenses or quasi offenses.
That which a possessor may institute, to have himself maintained or restored to his possession, when he has been disturbed or evicted. That for the delivery of merchandise or other effects, shipped on board any kind of vessels. That for damage sustained by merchandise on board ships, or which may have happened by ships tunning foul of each other.
Art. 3537. Commencement of prescription under Article 3536. The prescription mentioned in the preceding article runs:
With respect to the merchandise injured or not delivered, from the day of the arrival of the vessel, or that on which she ought to have arrived.
And in the other cases from that on which the injurious words, disturbance or damage were sustained.
And where land, timber or property has been injured, cut, damaged or destroyed from the date knowledge of such damage is received by the owner thereof. (Amended by Acts 1902, No. 33).