49 So.2d 44 (1950)
BEAUVAIS et al.
v.
D. C. HALL TRANSPORT, Inc., et al.
No. 7548.
Court of Appeal of Louisiana, Second Circuit.
November 3, 1950.
*45 Ainsworth & Ainsworth, New Orleans, Garrett & Pleasant, Shreveport, for appellants.
Max M. Morelock, Shreveport, Melvin F. Johnson, Shreveport, for appellees.
KENNON, Judge.
Plaintiffs, Mr. and Mrs. E. O. Beauvais, own a lot in Bossier City, Louisiana, at the northwest corner of Westerfield and Delhi Streets, where they have lived since 1941. Plaintiffs, Mr. and Mrs. R. V. Young, since about 1940, have owned and occupied as their family home the premises on Delhi Street just east of the Beauvais home.
*46 Defendant, D. C. Hall, in 1943 purchased a tract of land including the southwest corner of Westerfield and Delhi Streets and extending northward through the block to Barksdale Boulevard, the principal business street of Bossier City. On this tract in 1944 defendant D. C. Hall constructed a large building for use as a freight terminal in connection with his business of carrying freight by truck and trailer between cities in Texas, Oklahoma, Louisiana and Mississippi. In 1946 the premises were leased to D. C. Hall Transport, Inc., which continued to operate the premises as a freight terminal and warehouse. Both were joined as parties defendant in this suit filed originally on December 16, 1947 by plaintiffs who are seeking a total of $16,000.00 in damages resulting from nuisances created and maintained by defendants on the premises across Westerfield Street from the Beauvais property. The four plaintiffs claimed damages of $1500.00 each for inconvenience, discomfort, humiliation, worry, mental anguish, pain and suffering and injury to health. Each husband claimed an additional $5000.00 as depreciated market value of the family homesteads.
The specific nuisances complained of were the day and night operation of large trucks, the use of noisy steel platforms in loading operations, the making of repairs in a noisy manner, the use of air horns, the raising of dust, the loud talk and bad language of workmen and drivers, the causing of deep ruts in the Beauvais yard by a truck in January, 1947, the use of a noisy steam cleaner, the release of trash and waste paper, the pollution of the atmosphere through the burning of trash and waste paper and the maintenance of a grease rack and the installation of underground gasoline pumps.
Plaintiffs allege that while the terminal building front was on Barksdale Boulevard and in a commercial district, nevertheless it extended southward 165 feet and therefore some 15 feet in the restricted residential zone established by the zoning ordinances of the town of Bossier City.
The District Court, in a written opinion, decided in favor of plaintiffs and gave an award of $750.00 to each, or a total of $3000.00. A suspensive appeal was granted to the Supreme Court, which ordered same transferred as being within the appellate jurisdiction of this Court as fixed by the Louisiana Constitution. Article 7, § 29.
Defendants operate a modern motor freight line, using fifteen to twenty-five of the largest type of freight carrying trailers. Besides the one in Bossier City, they have freight terminals in such cities as Dallas, Oklahoma City and Jackson, Mississippi. Apparently, the procedure is to collect the freight in daytime and for the trucks to move in the early part of the night. The first incoming freight carrying vehicle arrives at the Bossier terminal around 1:00 a. m. and the loading and unloading operations are then carried on until after daylight the next morning. This occurs nightly except Saturday and Sunday nights when operations are curtailed or suspended.
This Court, in the recent case of Hobson v. Walker, 41 So.2d 789, 792, had occasion to consider the authorities relative to what constitutes such excessive, unreasonable and disturbing noises, particularly during night hours, as to make a "nuisance." In that case are cited many other Louisiana cases on this point and an interpretation given of the relevant articles, 667-669 of the Civil Code.
The law applicable to the case before us we think is the same as contained in the below quoted paragraphs from the Hobson-Walker case: "It must be conceded that the creation of excessive, unreasonable and disturbing noises, particularly during the night hours, unquestionably constitutes a nuisance, to the abatement of which parties disturbed thereby are entitled. However, it must be borne in mind that noise is not necessarily a nuisance, and a determination of this point can be made only after thorough consideration of all the surrounding circumstances and facts developed in a particular case. It is impossible to lay down any hard and fast rule inasmuch as numerous factors and elements must be taken into consideration, among which may be briefly noted the character of the locality, the nature of the noises, and the effect *47 thereof upon persons of ordinary sensibiliies. The determination of these points rests upon purely factual issues with respect to which the plaintiff in an action of this kind must bear the burden of proof."
The testimony of the four plaintiffs was that during the years 1945, 1946, and 1947, the activities on the D. C. Hall premises resulted in a great deal of noise and that their sleep and rest were disturbed, if not nightly, at least for several nights of every week. They were particularly disturbed by the operation of a steam cleaner which was installed originally on the west side of defendants' warehouse and operated there for some time during both day and night hours. Receiving complaints about the operation of the steam cleaner, defendants ceased night operations, although not until after the Bossier police had, in response to complaints, gone to the premises on two different nights and ordered defendants' employees to cease using the steam cleaner with its resulting loud noise.
The testimony of plaintiffs that the operation of defendants' business was noisy and constituted a nuisance was corroborated by that of Mr. Beauvais' nephew, who lived with them during the fall of 1946. He stated that the loud noise incident to the coupling of trucks and trailers, the operation of the steam cleaner, the sounding of horns and hammering interrupted the sleep and rest of himself and others in the house. Mrs. Young's mother verified their testimony that the noise came across the Beauvais lot, which was between the Young lot and defendants' warehouse, and caused disturbance of the sleep and rest of those occupying the Young premises. However, it is to be noted that she was not as emphatic as were Mr. and Mrs. Young; her attitude being indicated by the following question and answer:
"Q. Did it (the truck noises) disturb your sleep? A. Yes, to some extent."
Mr. H. B. Walker, who lived across the street from plaintiff Beauvais, testified that he heard the night noises and particularly the operation of the steam cleaner, but indicated that the noises were lessened after the complaint had been made and the loading and steam cleaning operations transferred to the far, or east side, of the warehouse.
Plaintiffs' testimony that great quantities of dust came into their homes was borne out by other witnesses. However, Westerfield Street is not paved and the evidence showed that there is heavy traffic on this street, particularly during the period when employees of Barksdale Air Base are going to work in the morning and returning in the afternoon.
Defendants introduced Mr. and Mrs. James A. Pearce, whose home was located just north of the Beauvais premises and directly across Westerfield Street from the D. C. Hall warehouse. Mr. Pearce, an employee of the United States Postoffice, testified that he had lived in the side of the house next to the D. C. Hall warehouse from March, 1947 until the date of the trial (April, 1948). He testified that he heard some noises from the D. C. Hall premises and also from Barksdale Boulevard; that he never felt that the noise was sufficient to warrant the making of any complaint or the calling of the police. He testified further that he worked from August to December, 1947, until midnight or later and customarily slept during the early morning hours. Mrs. Pearce's testimony was substantially the same; namely, that the neighborhood was noisy in general but that there were no unusual, excessive, or unreasonable noises from the D. C. Hall operations. They blamed the dust which came into their windows more on the traffic on unpaved Westerfield Street than on operations on the D. C. Hall parking and loading area. Mrs. Pearce noticed the noise from the steam cleaning machine until it was moved to the other side of the warehouse. Neither Mr. nor Mrs. Pearce noted any unpleasant odors from defendants' premises.
Defendants introduced W. D. Walker, member of the Bossier City Police Department from September, 1945 until the date of the trial. He testified that never while he was on duty had he received a complaint regarding the D. C. Hall operations; that after complaints had been *48 made at the City Hall by plaintiffs, he had occasion during his night shift to park on Westerfield Street between Barksdale Boulevard and Delhi Street; that he stayed as long as twenty minutes at a time and heard no unusual or objectionable noises. During this period he served alternate months on night duty and at no time did he hear the steam cleaning machine in operation. He heard no blowing of horns except when the trucks were leaving.
A. J. Loomis, a member of the Bossier City police force during 1945 and 1946 and until December, 1947, testified that he went to the D. C. Hall premises and stopped the use of the steam cleaning machine during the early morning hours; that this occurred during the fall of 1946 and he never heard any further complaint. He and other police officers testified that they, on various occasions, had parked their cars at night near the Hall premises but they did not hear any loud noises.
Eugene Kile testified that he formerly worked for defendants as night dock foreman; that there was no body repair work done at night; that about the latter part of 1946, his company ceased to work on the west (Beauvais) side and began to do their night loading on the east side; that there were no bad odors in connection with the operation of the D. C. Hall business; that trash was burned on the southeast corner of the lot for a time, but this was stopped about two years before the trial. He testified that the steam cleaning machine was used at night when it was first installed; that complaints were made and they ceased to use it between midnight and 7:00 a. m.
Another of defendants' foremen testified that trains operated over the nearby railroad tracks about once an hour all through the night. He stated that no foul odors were created on the Hall premises; that on occasions at night, he noticed the odor from the Shreveport city dump across the river at Fort Humbug, particularly when the wind was from that direction. On cross-examination he testified that he had personally gone over to Fort Humbug to note where the odor came from.
Defendants' head mechanic testified that the only repairs conducted at night are those to broken air lines or to defective lights; that all of the D. C. Hall body work is done at a body shop in Bossier City.
He measured the distance between the middle of the west loading dock on the D. C. Hall property to the Beauvais property line as 120 feet, and estimated that there were an additional 30 feet from that point to the Beauvais house itself. The distance from the same point to the property line of the house occupied by Mr. and Mrs. Pearce he found to be 89 feet. From the pictures in the record, it appears that the Pearce house sits about as close to the property line as does the Beauvais house. He testified that the premises were kept clean and he at no time noticed any unpleasant odors.
Defendants' manager testified that he received his first complaint about the night noises late in 1946; that he arranged to stop using the steam cleaner at night and to cease loading trucks at night on the west dock, closing the doors down each night on that side and causing the freight to be handled entirely from the east side. The location of the steam cleaner was changed to the east side about December 1, 1947. When asked why he did not change the night operations and the steam cleaning equipment sooner to the east side, he testified that it was necessary to improve the truck standing space on that side and to employ a plumber to make the installations necessarily incident to the transfer of the steam cleaning equipment. There was testimony that after the complaints, orders were given that the D. C. Hall employees keep quiet at night. "Quiet" signs were posted. Paddings were used under the steel platforms used in carrying freight from the dock into the trailers.
The neighborhood of plaintiffs' residences is of a mixed residential and commercial nature. Plaintiffs' homes face east on Delhi Street. Some 500 feet to the east this street "dead ends" into a main line railroad track. To the west and toward Shreveport, it is a right-of-way street.
*49 The houses in the same block with plaintiffs and facing the other direction are on Barksdale Boulevard, which is the main business street of Bossier City and leads into two or more of the principal highways leaving Shreveport to the south and east. In the immediate vicinity are to be found a bus terminal, a bulk oil and grease plant, besides various garages, restaurants, filling stations and stores. Westerfield Street between Barksdale Boulevard and Delhi Street is often used by incoming drivers, desiring to avoid the Barksdale traffic and lights, as a means of getting off Barksdale Boulevard on to Delhi Street, on which they turn west; Delhi Street as a result being a sort of by-pass route into Shreveport. The railroad tracks, approximately a block away from plaintiffs' homes, are used from time to time both day and night.
As stated in the Hobson case, supra, the presence of other disturbances is not of itself a defense, nevertheless, they are to be considered as a part of the general situation. This is particularly true with reference to dust complained of by plaintiffs since it would be difficult, if not impossible, to distinguish between the dust raised by traffic using the dirt street connecting Barksdale Boulevard and Delhi from the dust stirred up by defendants' operations on their own property.
Plaintiffs have not sustained the allegation that the presence of the gasoline tanks on defendants' premises constituted a dangerous situation so far as they are concerned. The record showed that the underground tanks were installed by the Standard Oil Company in the most approved modern manner and method and that the danger of explosion or damage to plaintiffs' premises, in this way, was remote if not nonexistent.
From our study of the testimony and record, we conclude that the operation of the truck terminal during the years 1944, 1945, and 1946 (until late in the year) constituted an actionable nuisance, irrespective of any ordinance of the municipality of Bossier City. We further find that, after complaints were made in the fall of 1946 and after the Bossier Police Department had forcibly stopped the noisy night operation of the steam cleaner, defendants made a sincere and successful effort to be a better and quieter neighbor to plaintiffs. The action in transferring the loading operations to the east dock and the promulgation and enforcing of "quiet" rules, the ceasing of night operation of the steam cleaning and the subsequent removal of this noisy machinery to the east side of the building, all resulted in the removal of this business operation from the nuisance category. The evidence justifies a holding that the business as operated after that date was not an actionable nuisance.
Plaintiffs allege that the operation of defendants' trucking terminal is in violation of the ordinances of the town of Bossier City as follows: Ordinance No. 365 of 1946, Ordinance No. 274 of 1940, as amended by Ordinance No. 276 of 1941, and Ordinance No. 233 of 1935. By the terms of these ordinances, the portion of defendants' terminal which is in an area extending no further than 150 feet south of the south boundary of Barksdale Boulevard is within the commercial distance, and the portion of the garage and parking lot more than 150 feet south of the south boundary of Barksdale Boulevard is within the residential or restricted area. Defendants attack these ordinances on the ground that same were enacted without compliance with the requirements regarding hearings and notice set forth in Sections 4, 5, and 6 of Act No. 240 of 1926. The Louisiana Supreme Court in the case of State ex rel. Holcombe v. City of Lake Charles, 175 La. 803, 144 So. 502, held that the omission by the zoning commission and the city council of the requirements of Act No. 240 of 1926 relative to the holding of hearings, publication of notice, etc., was a vital and fatal defect. This holding was reaffirmed in the case of Mills v. City of Baton Rouge, 210 La. 830, 28 So.2d 447. The record before us shows that the zoning ordinances of the town of Bossier City were not enacted in compliance with the terms and provisions of Act No. 240 of 1926 and therefore same were without *50 force and effect. If, however, the nature and manner of operation of defendants' business was such as to make it in fact a nuisance, recovery by plaintiffs is not dependent upon the validity of the zoning ordinances.
Defendants, without admitting that the operation of their terminal constituted a nuisance, or that actual damage was done to plaintiffs' property, filed and urged a plea of prescription as to the claim of Mr. Young and Mr. Beauvais for depreciation of value in their lots and improvements due to the erection of the truck terminal.
The evidence discloses that defendants' terminal had been constructed and operation thereon commenced as early as June, 1944. The present suit was instituted December 16, 1947, over three years after the construction of the terminal and commencement of the alleged damage. In cases where the commission of a wrongful act is attended immediately by resulting damage, the Louisiana courts have held that the initial point for the one year prescription, under Articles 3536 and 3537 of the Civil Code, is the date on which the damaging act is completed. Gulf Coast Paving Co. v. Gulf Public Service Co., 179 La. 228, 153 So. 701; Young v. International Paper Co., 179 La. 803, 155 So. 231; Parro v. Fifteen Oil Co., La.App., 26 So.2d 30.
In the Parro case, defendant's oil drilling operations began in 1938 to discharge damaging salt water on plaintiff's land. This damage was continuous until December, 1944 (date of trial). Suit was filed October 30, 1943. The court denied plaintiff's demand for damage since the greater portion of the damage was sustained more than a year prior to the institution of suit. In the case before us, the evidence offered by plaintiffs was that the presence of defendants' truck terminal caused a one-third depreciation in the value of the property of each, and the claimon depreciation in market valuecould hardly be considered as an action based on continuing and progressive damages. Had this particular portion of plaintiffs' claim been so based, the plaintiffs, in order to establish their rights for the unprescribed portion of the depreciation damage, were obligated to prove the damages sustained during the year immediately preceding filing of the suit. This was not done.
Other states have followed a similar rule. In 142 A.L.R. 1320, there is a discussion of a Texas case, Vann v. Bowie Sewerage Co., 127 Tex. 97, 90 S.W.2d 561, in which the court dismissed a claim for depreciated land value due to the pollution from the septic tank of defendant, and held there that the claim for depreciation in land value was barred by limitation on the theory that when injury to land results from something that the law regards as a permanent nuisance, in legal contemplation the injury to the land occurs at that time and prescription on the action begins to run from that date.
Therefore, defendants' plea of prescription was valid to that portion of plaintiffs' claim based on depreciation of property value.
The District Court allowed the same damages to each of the four plaintiffs. We think the evidence sustains the award to Mr. and Mrs. Beauvais. The location of the Young premises, fifty feet further removed than the Beauvais lot, is such as to make the noises and disturbances of less inconvenience to Mr. and Mrs. Young. We therefore have concluded that the award to Mr. and Mrs. Young should be reduced to $500.00 each.
For the reasons assigned, the judgment in favor of Mr. and Mrs. Royal V. Young is amended by reducing the ward to $500.00 each for Mr. and Mrs. Royal V. Young; and as amended, the judgment of the District Court is affirmed. Costs to be paid by defendants.