HALL, Judge.
The City of New Orleans and The Health Department of the City of New Orleans filed this suit seeking to enjoin Degelos Bros. Grain Corporation from using its dehydrating plant in any manner “which will create or cause to be created odors which are obnoxious, vile, stinking, irritating and/or nauseous to the citizens of New Orleans.” Four interventions were filed, one supporting plaintiffs’ side and three supporting the side of defendant. Following an extensive hearing on the rule nisi the Trial Court granted a preliminary injunction in plaintiffs’ favor prohibiting and enjoining defendant “from using its dehydrating plant in any manner which will create or cause to be created, rancid, acrid odors which are obnoxious and nauseous to the citizens of the City of New Orleans,” but held its writ in abeyance for a period of 45 days from the date of its judgment, which was rendered on May 28, 1964. All four interventions were dismissed by the Court.
On June 9, 1964 the Trial Court granted. defendant a suspensive appeal from its judgment and the matter is before us thereon. None of the intervenors appealed.
The defendant owns and operates a dehydrating plant at the foot of Napoleon Avenue, near the Mississippi River, in the general area of the 4700 block of Tchou-pitoulas Street in the City of New Orleans. The plant is used exclusively for dehydrating spent brewer’s mash which is the residue or by-product of the brewing of beer, *353 and consists of spent barley, rice and other grains. Defendant has contracts with all of the breweries in the city to purchase all of their spent mash. After dehydration defendant sells it for cattle feed.
Essentially the dehydration process used by defendant consists of subjecting the wet mash received from the breweries to a stream of air which has been pre-heated to temperatures varying from 500 to 900 degrees fahrenheit. During the process the heated air becomes much reduced in temperature and is exhausted through a smoke stack. It is the odor emanating from the exhaust which is the cause of complaint in this suit.
Defendant began its plant operations on or about January 2, 1963. In March or April 1963 the city authorities began to receive complaints about the odors from the plant from people living in its vicinity. The complaints continued and became so numerous that the city filed this suit on November 20, 1963.
The issues in the case are predominately factual. Does the plant emit an odor? If so, is the odor obnoxious and nauseous to an extent to make it a public nuisance?
Defendant admits that the plant emits an odor under certain conditions. As a matter of fact defendant has employed engineers and has gone to considerable expense in an effort to find some means or method of eliminating the odor. When the trial ended defendant had a gas absorber under order from the Buffalo Forge Co. of Buffalo, N. Y. which it hoped might solve the problem. This absorber was not due for delivery until sometime in July 1964 and is the reason why the Trial Court held its injunction in abeyance for 45 days. However instead of waiting to see what result the gas absorber would accomplish defendant applied for a suspensive appeal.
Although defendant admits that the plant emits an odor, it contends that the odor is not unpleasant and occurs only a small percentage of the time, and contends that its efforts to eliminate the odor were undertaken solely to promote cordial relations with the public.
The record consists of the testimony of over forty witnesses and no good purpose would be served by a detailed recital of their testimony. Some of the witnesses described the odor as “disgusting,” “sickening,” “obnoxious,” “awful,” “smells like burnt popcorn,” “burnt bread,” “burnt rice,” “burnt manure,” “like old rags burning.” Other witnesses stated the odor has a “chicken-gut smell,” “smells like something dead around the house,” “smells like a sewer.”
On the other hand some of the defense witnesses testified the odor is non-existent. Others state that “there is an odor but it is one common to the river-front area, it is a compound odor that is not obnoxious or toxic.” Still other defense witnesses state that “there' is an odor and it smells like roasted chesnuts; ” “it is a very pleasant. odor, the kind you find in a theatre lobby, a pop-corn odor.”
During the progress of the trial the Trial Judge visited the plant and inspected the area and the neighborhood on 31 different occasions within 13 days.
After a lengthy “Finding of Fact” in which he resolved all factual issues in detail the Trial Judge reached the conclusion that defendant’s plant “emits a rancid, acrid, penetrating odor which is obnoxious, naus-seous and a nuisance.” He further found that the rancid, acrid odor is produced by the defendant’s plant and is not a compound odor produced by the accumulation of odors on the riverfront, and that the odor was not present prior to the beginning of operations by defendant. He also found that the odor permeates the neighborhood under certain atmospheric conditions and may be present for several hours at a time and results in serious and material discomfort and inconvenience to the inhabitants of a considerable area.
*354 We have carefully studied the record and we find no manifest error in the Trial Court’s findings of fact and his conclusions therefrom.
Most of defendant - appellant’s “Specification of Errors” are concerned with factual issues which were resolved against it. However, in addition thereto defendant-appellant contends that the Trial Court erred in granting an injunction where, as it contends, there is no evidence of any present or threatened irreparable injury, loss or damage and where there exists an adequate remedy at law available in a suit for damages by any individual in a position to prove injury. The short answer to that contention is that the neighbors are being subjected to serious discomfort and inconvenience, as found by the Trial Court, and since the odor complained of is continuing and recurring any remedy afforded at law would be inadequate. See McGee v. Yazoo & M. V. R. Co., 206 La. 121, 19 So.2d 21, 23.
Defendant-appellant’s contention that the issuance of an injunction closing its plant would unfairly cause defendant tremendous financial loss and would deprive it of its right to equal protection and due process of law is without merit. The city is not seeking to close defendant’s plant and the injunction as issued does not do so. It simply abates a nuisance which emanates from the present operation of the plant and it is conceded that there are methods whereby the odor may be eliminated by defendant.
Defendant-appellant also contends that virtually every witness for plaintiffs was unusually susceptible to odors of any kind because of asthsma, bronchitis, shortness of breath associated with heart trouble, or ulcerated stomach. While the majority of plaintiffs’ witnesses were so afflicted (and it is quite natural that they should complain the most) there were other plaintiff witnesses who were not so afflicted who testified to the nauseous character of the odor. In the same connection defendant-appellant complains that the Trial Judge based his judgment on his own personal opinion about the odor without being subject to cross-examination to determine whether he was unusually susceptible to odors. The Trial Judge was confronted with conflicting evidence and he had a perfect right to visit the area, not for the purpose of supplying new evidence, but for the purpose of evaluating the testimony given by the witnesses. See Russell v. Bartlett, La.App., 139 So.2d 770; see also McGee v. Yazoo & M. V. R. Co. supra, 19 So.2d at p. 27. We feel sure that the Trial Court would not have undertaken his visits to the area had he been for any reason unusually susceptible to odors.
Defendant-appellant also contends that a ten year record of winds recorded at Mois-ant Airport shows that winds blowing out of the south, southeast and southwest (from which directions only the odor comes to the complaining neighbors) occur only 5% of the time or approximately V/2 days per month. If we use the same basic data, regardless of the fact that it was recorded some miles from the area in question, we can reach other mathematical conclusions, such as that the odor would descend upon the neighborhood for over an hour each day in the month, or over two hours 18 days out of the month, etc.
We conclude that the only serious issues involved are issues of fact and we find no manifest error in the judgment appealed from.
For the foregoing reasons the judgment appealed from is affirmed, costs of both Courts to be borne by defendant-appellant.
Affirmed.