255 So.2d 800 (1971)
E. Lorenz BORENSTEIN et al.
v.
JOSEPH FEIN CATERERS, INC. d/b/a the Court of Two Sisters, et al.
No. 4335.
Court of Appeal of Louisiana, Fourth Circuit.
December 8, 1971.
Rehearing Denied January 10, 1972.
*802 Joseph Neves Marcal, III, New Orleans, for plaintiffs-appellants.
Occhipinti, Occhipinti, Casano & Kunz, A. R. Occhipinti, New Orleans, for defendants-appellants.
Joseph W. Nelkin and Benjamin Washastrom, New Orleans, for defendant-appellee.
Before LEMMON, TAYLOR and BOUTALL, JJ.
LEMMON, Judge.
This is a suit for abatement of certain nuisances and for damages by E. Lorenz Borenstein and Robert A. Vaucresson, Jr., the owner and lessee respectively of the premises at 624 Bourbon Street in the City of New Orleans. Defendants are Frank Caracci and Nick Karno, the owners of the adjoining premises, and Joseph Fein Caterers, Inc. d/b/a The Court of Two Sisters, the lessee.
The trial court maintained defendants' exception of improper cumulation of actions and required plaintiffs to elect between the abatement suit and the damage suit. Upon plaintiffs' election to proceed in abatement, the trial court dismissed the damage suit without prejudice.
After trial on the merits the trial court found that certain conditions constituted abateable nuisances and enjoined the defendant owners from permitting these conditions to continue. However, plaintiffs' suit against the defendant lessee was dismissed.
Subsequently, a motion to have an expert fee taxed as costs was filed by defendant lessee, and judgment was rendered setting the fee which was assessed to plaintiffs.
Defendant owners appealed from the judgment ordering the abatement of two nuisances, and plaintiffs appealed separately from the same judgment insofar as it dismissed their demand to abate a third alleged nuisance and dismissed the defendant lessee from the suit. Plaintiffs also appealed from the later judgment setting the expert fee and taxing it to them as *803 costs. Lastly, plaintiffs assign as error the maintaining of the exception of improper cumulation of actions, which resulted in the dismissal of their damage suit.

NUISANCES
Plaintiffs sought to abate as nuisances three separate conditions arising from defendants' use of the adjoining property (1) a raised planter along the party wall common to both properties, which because of allegedly improper installation caused moisture to accumulate and deteriorate the base of the wall; (2) a large vine which grew up and over the party wall and allegedly caused damage to plaintiffs roof and building walls; and (3) a surface drain designed for intermittent rain water, which allegedly was improperly used for continuous water discharge, the overflow from which deteriorated and weakened the party wall.
The obligations of proprietors toward one another are prescribed by C.C. art. 666-669.[1] Relying on these articles, the Supreme Court in Borgnemouth Realty Co., Ltd. v. Gulf Soap Corp., 212 La. 57, 31 So.2d 488 (1947) declared:
"The owner of property has a right to conduct thereon any lawful business not per se a nuisance, as long as the business is so conducted that it will not unreasonably inconvenience a neighbor in the reasonable enjoyment of his property. But every business, however lawful, must be conducted with due regard to the rights of others, and no one has a right to erect and maintain a nuisance to the injury of his neighbor even in the pursuit of a lawful trade, or to conduct a business on his own land in such a way as will be injurious or offensive to those residing in the vicinity." 31 So.2d at 490.
Recently, the Supreme Court restricted the application of C.C. art. 669 to nuisances caused by diffusing smoke or nauseous smell, holding that these grounds are restrictive rather than illustrative. Nevertheless, the court employed the cited articles together with the common-law theory of nuisance to grant the relief sought.[2] *804 Robichaux v. Huppenbauer, 258 La. 139, 245 So.2d 385 (1971).
Regardless of the basis upon which relief is granted, the principle remains that otherwise lawful conditions may be abated, if the conditions result in material injury to neighboring property or interfere with the comfortable use and enjoyment of that property by persons of ordinary sensibilities.
However, defendants contend that the term nuisance refers to a condition which is offensive to the senses, such as a nauseous odor, and does not apply to a thing of beauty, such as the vine in this case. It is not the object or condition itself which determines the existence of a nuisance, but rather the effect of that object or condition on adjoining property and persons.
It has been stated that anything is a nuisance which causes substantial injury to the property of another or obstructs the reasonable and comfortable use or enjoyment of property. 58 Am.Jur.2d 608, Nuisances, § 43. If the object or condition on defendants' property had released a chemical which caused damage to plaintiffs' building, it is obvious that abatement was in order. The same result should obtain when the object or condition results in excessive moisture or destructive botanical action. See 1 Am.Jur.2d 775, Adjoining Landowners, § 127.
Nuisance is a very comprehensive term which is not and should not be the subject of technical definitions or rigid rules. The law in this area should be expansive so as to provide for fair and reasonable results under all of the circumstances of each individual case.
With this background, we now separately discuss the evidence on each of the three conditions.
The Raised Planter
There was a common or party wall on the property line between plaintiffs' property and The Court of Two Sisters. A raised planter on the latter property extended for a distance of approximately 71 feet parallel to the party wall and received rain water from a large canopy in the patio. An architect, who at plaintiffs' request examined the property on several occasions, testified that the planter was apparently installed without any attempt to protect the party wall from rain water or plant watering. He found a serious deterioration of the mortar and soft clay bricks at the base of the wall, which finding was contradicted to some extent by a structural engineer who testified on behalf of the defendants.
Plaintiff Borenstein, having performed extensive repairs to the plaster walls and floor opposite the planter, testified that he was unaware that the problems were associated with the planter until he employed the architect.
Although moisture problems exist in most masonry walls in the French Quarter, the architect found more deterioration in the surface of the party wall than in the other brick walls of plaintiffs' building. The engineer also somewhat contradicted this finding in that he proclaimed that the party wall and other walls were structurally sound. However, we note that he was concerned primarily with the extent rather than the cause of damages, and his general testimony on structural integrity denoted only absence of settlement, movement or cracking.
Even though the party wall may be safe, a nuisance can still exist because of the water and moisture emanating from the planter. The trial judge found that the planter created a nuisance by causing moisture on the walls of the adjoining premises, and we find no manifest error in this conclusion.
The trial court judgment enjoined defendants from continuing to maintain the raised planter in such a manner as to cause *805 moisture on the walls of the adjoining premises. Defendants contend that this language is too vague and general to be enforceable. Several methods of correction were suggested in the testimony, and in argument before this court defendants indicated they were willing to install a membrane. The judgment simply allows defendants to choose the method least expensive and most convenient to them in achieving compliance. The result, rather than the method, was properly ordered by the trial court.
The Catclaw Vine
An enormous climbing vine grew from defendants' premises and climbed the three-story, brick party wall and onto the roof of the slave quarters in the rear of plaintiffs' property.
The vine had been cut down following Hurricane Betsy in 1965, at which time the roof on the slave quarters of 624 Bourbon Street had been replaced. When plaintiff Borenstein purchased the property the following year, there was no problem with the vine, but by 1969 the vine was causing damage to plaintiffs' roof and gutters by growing under the shingles. The resulting leaks caused the plaster on the soffit to crumble and fall. Additionally, the vine caused some damage to the mortar between the bricks on the wall. These conditions were well established by the testimony of the architect, who recommended corrective action.
An additional complaint regarding the vine arose when plaintiffs' premises were leased for a restaurant operation. After a heavy rain, the vine hanging over the back side of the patio dripped for hours, causing limited use of the patio bar and tables.
The trial court found that the growth was a nuisance and enjoined defendants from permitting the vine to grow over the property line onto plaintiffs' premises. We believe that the evidence amply supports this decision.
The Open Drain
Plaintiffs also complained about the improper use of an open surface drain, about two inches wide and three inches deep, which ran the length of an alleyway between their property and defendants' warehouse. They alleged that the drain, designed for intermittent rain water, was used by defendants to discharge a constant flow of water, the overflow of which resulted in weakening the foundation of plaintiffs' building. Based on information furnished him regarding the improper use of the surface drain, the architect confirmed that this damage could result.
However, the plaintiffs did not present satisfactory proof of the alleged misuse of the drain, and the trial judge properly dismissed this nuisance claim.

INJUNCTIVE RELIEF
Defendants argue that irreparable injury must be pleaded and proved to warrant injunctive relief. This is not necessary in a suit to abate a nuisance. Since the nuisance is continuing and recurring, any remedy afforded at law would be inadequate. City of New Orleans v. Degelos Bros. Grain Corp., 175 So.2d 351 (La.App. 4 Cir. 1965).

DISMISSAL OF LESSEE
Defendant lessee, in arguing that it was properly dismissed from the suit, cites the case of Burke v. Besthoff Realty Co., Inc., 196 So.2d 293 (La.App. 4 Cir. 1967), which held that the "proprietor" spoken of in C.C. art. 667 is the owner of the property.
We hesitate to follow the restricted view expressed in the Burke case. In 40 Tul.L. Rev. 701, 704, Professor Ferdinand F. Stone, recognizing that the statutory obligation had been enforced against mineral *806 lessees and holders of long term leases,[3] expressed the view that:
"In these days of long term leases, complex mineral rights, and horizontal property divisions it would be a mistake to limit the word `proprietor' to its early nineteenth-century connotation, thus ignoring modern developments in property rights."
In this case plaintiffs are seeking to abate a nuisance. The nuisance is a condition, and the person legally liable for the nuisance is the person actually responsible for the existence of the condition. This includes the person who creates the nuisance and the person who participates in the active continuance thereof.
We therefore believe that the liability of a party as a proprietor under C.C. art. 667 in a nuisance and damage case should be determined on the basis of his responsibility for the existence of the condition which constitutes the nuisance.
When the defendant lessee first entered into the lease, the vine and the raised planter were already on the premises. Although the lessee made no effort to trim or prune the vine or to correct the condition of the raised planter, neither did he actively participate in or contribute to the conditions which caused plaintiffs' damages.
For these reasons we believe that the demands against the defendant lessees were properly dismissed.

EXPERT FEE
Plaintiffs attack as excessive the $600.00 fee awarded for the expert testimony of the structural engineer.
LSA-R.S. 13:3666 provides for "additional compensation, to be fixed by the court, with reference to the value of time employed and the degree of learning or skill required." While the testimony of the structural engineer was oriented more toward the extent of damage than the cause of damage, an evaluation of both cause and extent was necessary to place in proper perspective this suit to abate a nuisance condition because it was causing damage.
The record does not reflect the exact amount of time spent by the expert in inspections and other preparation for trial. However, it was established that he made at least two thorough inspections and spent approximately one-half day in testifying at the trial.
The fixing of the fee lies within the sound discretion of the trial court and should not be disturbed unless clearly erroneous. Orleans Parish School Board v. Bond, 200 So.2d 411 (La.App. 4 Cir. 1967). While the fee is somewhat high based on the record before us, we cannot say that the trial judge abused his discretion.

DISMISSAL OF THE DAMAGE SUIT
Plaintiffs contends that the trial judge erred in interpreting C.C.P. art. 462 when he maintained the exception of improper cumulation of actions and further erred when he ordered plaintiff to elect which action he would proceed with, rather than ordering separate trials of the actions under C.C.P. art. 464.
The trial judge apparently followed a previous ruling of this court in People of Living God v. Chantilly Corp., 211 So.2d 445 (La.App. 4 Cir. 1968). This decision was severely criticized by Judge (now Justice) Albert Tate, Jr., in 30 La.L.Rev. 286 (1969).
However, we cannot now pass on the merits of plaintiffs' argument. The judgment dismissing the suit for damages after plaintiffs' election to proceed in abatement is now a final judgment, and no appeal was *807 taken. In People of Living God v. Chantilly Corp., 251 La. 943, 207 So.2d 752 (1968), the Supreme Court held that a judgment maintaining an exception of improper cumulation of actions and ordering an election was reviewable upon rendition of the final judgment dismissing without prejudice both actions upon failure to elect, since the judgment of dismissal was final and appealable.
Plaintiffs having failed to timely utilize the appellate process upon dismissal of his damage action, we have no jurisdiction to now review that judgment of dismissal.
Accordingly, the judgment of the trial court is affirmed.
Affirmed.
TAYLOR, J., absent because of illness, takes no part in the opinion.
NOTES
[1] These articles provide:

Art. 666. "The law imposes upon the proprietors various obligations towards one another, independent of all agreements; and those are the obligations which are prescribed in the following articles."
Art. 667. "Although a proprietor may do with his estate whatever he pleases, still he can not make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him."
Art. 668. "Although one be not at liberty to make any work by which his neighbor's buildings may be damaged, yet every one has the liberty of doing on his own ground whatsoever he pleases, although it should occasion some inconvenience to his neighbor.
"Thus he who is not subject to any servitude originating from a particular agreement in that respect, may raise his house as high as he pleases, although by such elevation he should darken the lights of his neighbors's [neighbor's] house, because this act occasions only an inconvenience, but not a real damage."
Art. 669. "If the works or materials for any manufactory or other operation, cause an inconvenience to those in the same or in the neighboring houses, by diffusing smoke or nauseous smell, and there be no servitude established by which they are regulated, their sufferance must be determined by the rules of the police, or the customs of the place."
[2] The concurring opinion preferred to treat the nuisances named in C.C. art. 669 as illustrative and to apply civil law without resort to common law authority or terminology. Furthermore, language in the opinion in Reymond v. State Through Department of Highways, 255 La. 425, 231 So.2d 375 (1970) construed "work", as used in C.C. art. 667, to mean only "constructions", while Chaney v. Travelers Ins. Co., 259 La. 1, 249 So.2d 181 (1971) rejected this proposition and stated that "activity" harmful to a neighbor is included in the statute. See also 31 La.L.Rev. 221 (1971).

Despite these indications of flux, we feel that this case falls within the statutes and jurisprudence which allow an action for abatement and damages.
[3] Contractors have often been held liable as agents under these articles. See Chaney v. Travelers Ins. Co., supra, in which the Supreme Court held the owner and his contractor liable in solido for the latter's construction activity which caused damage to neighboring property.