313 So.2d 877 (1975)
Robert Willis MORELAND et ux., Plaintiffs-Appellees,
v.
ACADIAN MOBILE HOMES PARK, INC., Defendant-Appellant.
No. 12625.
Court of Appeal of Louisiana, Second Circuit.
June 3, 1975.
Rehearing Denied July 1, 1975.
Writs Refused September 25, 1975.
*878 Shuey, Smith & Carlton by W. Gene Carlton, Shreveport, for defendant-appellant.
*879 Campbell, Campbell, Marvin & Johnson by John T. Campbell, Minden, for plaintiffs-appellees.
Before PRICE, HALL and DENNIS, JJ.
PRICE, Judge.
Robert Willis Moreland and his wife, Linda Marcella Moreland, brought this action against Acadian Mobile Homes Park, Inc., and its successor in ownership, Pittman-Harber, for damages to their property allegedly resulting from the construction and operation of a mobile home park. Plaintiffs also seek injunctive relief to prevent further damage from the activities complained of.
From the trial court judgment awarding plaintiffs damages in the amount of $9,000, defendants have perfected this suspensive appeal. Plaintiffs have answered the appeal, asking for an increase in the amount awarded and for modification of the judgment to include injunctive relief which was denied by the trial court.
The factual background giving rise to this litigation, as shown by the record, is essentially as follows:
Plaintiffs purchased a home in the year 1965 situated on a large rural lot lying adjacent to and south of U.S. Highway 80 and just west of its intersection with State Highway 614, known as the Haughton-Red Point Road in Bossier Parish.
At the time of the purchase a swale or depression ran along and adjacent to the west boundary of this property serving as a natural drain for several hundred acres of land north of Highway 80. Rainfall from this area flowing from north to south and east to west passes through two large culverts underneath Highway 80 which discharges the flow through the drainage swale into a small creek running from east to west at the rear of plaintiffs' lot. To improve the drainage and appearance of their property plaintiffs obtained permission to grade and sod the unimproved swale west of their lot. It was thereafter cared for and mowed by plaintiffs as a part of their yard. On April 21, 1970, the Acadian Mobile Homes Park, Inc., purchased a wooded tract of approximately 40 acres situated north of and adjacent to U.S. Highway 80 several hundred feet east of plaintiff's residence. This tract is a portion of the watershed area which drains through the swale. Immediately after purchase of this property the defendant corporation began to prepare a site for a mobile home park to accommodate approximately 243 mobile homes. At about this same time, on June 11, 1970, plaintiffs acquired the ownership of the strip along their west boundary forming the drainage swale involved herein for the sum of $1,000.
In preparation of the mobile home park site it was necessary that trees and vegetation be removed and extensive grading and leveling performed for installation of streets and other improvements. This caused a washing of loose top soil to occur which ultimately flowed across the drainage swale on plaintiff's property. By this time plaintiffs had developed the swale into a shallow depression with a very gradual slope which was completely sodded and susceptible of being mowed with a tractor. Heavy rainfall caused some overflow onto plaintiff's yard, leaving deposits of sand and other debris which apparently washed from the Acadian construction site.
A sewage disposal system was installed in connection with the park which requires the discharge of a chemically treated effluent. To dispose of the effluent Acadian ran a four-inch plastic line from its treatment plant located on the southwest corner of its property to the ditch along the north side of Highway 80. The effluent thus began discharging through the culverts under the highway and across the natural drain on plaintiffs' property into the creek bed at the rear. This resulted in a continuous flow of effluent through the drain as compared to the intermittent flow of water *880 prior thereto which occurred only during or immediately following rainfall. This constant flow of liquid has caused the drainage swale to remain wet and boggy and to begin a gradual erosion, resulting in the formation of a gulley with steep sides through the bottom of the swale. Thus the swale can no longer be mowed and landscaped as was done prior to construction of the mobile home park.
The record further shows that defendant, Acadian, sold the mobile home park in question to a partnership styled Pittman-Harber, on April 30, 1973, and that the partnership has continued the operation of the park since this date.
Plaintiffs allege in original and amended pleadings that both of the defendants are liable to them for a loss of value to their residence and for the mental anguish suffered by them as a result of defendants' actions. In their petition initiating this action plaintiffs allege defendants were at fault in causing the conditions complained of by:
A. Failing to take proper caution before cutting down the trees on their property and allowing sand, debris, sewage and other deposits to flow onto petitioners' property;
B. Failing to stop the flow of sand, debris, sewage, and other deposits onto petitioners' property;
C. Failing to erect an adequate sewage disposal plant which would prevent sewage from flowing onto petitioners' property;
D. Creating un-natural pipe line system which aims sewage, sand, and debris at petitioners' property.
Plaintiffs further contend they will suffer irreparable injury if defendants are allowed to continue their injurious activities and request the issuance of an injunction to prevent the further discharge of debris or effluent on their property.
By answer and through a peremptory exception of no cause of action, defendants deny any liability to plaintiffs, contending they have the lawful right to remove trees and vegetation from their own property and that the construction has been carried on in accord with the rules and regulations of existing regulatory agencies. Defendants further contend no alteration has been made in the natural drain running across and from its property and that it is impossible for them to restrict their use of the natural drain so as to comply with the demands of plaintiffs. Defendants further plead the exception of prescription as to any damages occurring more than one year prior to the filing of plaintiffs' action on July 19, 1972.
In overruling the exception of prescription the trial judge found that although plaintiff had alleged acts of negligence against defendants in their pleadings initiating this action, the actual basis for the relief sought by them is under Article 667 of the Civil Code which is the source of the doctrine of sic utere in this state. The court further found the activities commenced by Acadian and continued by Pittman-Harber had caused damage to plaintiffs' property which was compensable by monetary damages. No injunction was therefore granted to plaintiffs, although the trial judge reserved the right to render such relief in the future if the circumstances relating to the flow of sewage effluent demands it. The court found the cost to restore plaintiffs' property and to effect preventive measures from future damages to be the sum of $6,000. The court also found the evidence to show plaintiffs had sustained mental anguish by having to helplessly watch their property deteriorate in value and awarded each plaintiff the sum of $1,500 as a separate item of damage.
The principal issues for resolution on this appeal as formulated by defendants' *881 assignment of errors and plaintiffs' answer to the appeal are:
(1). Whether prescription of one year is applicable to the claims of plaintiffs that defendants have caused them damage by construction on defendants' lands.
(2). Whether defendants' use of the natural drain for discharge of treated sewage effluent is within the rights accorded the owner of the dominant estate under Article 660 of the Civil Code, and whether defendants are liable to plaintiffs for damages and entitled to injunctive relief under Article 667.
(3). Whether the damages awarded plaintiffs by the trial court are proper.

PRESCRIPTION
Defendants contend the trial court erred in recognizing the applicability of the one-year prescriptive period as provided by Civil Code Article 3536 to plaintiffs' claims for damages under Article 667. The thrust of defendants' argument in this regard is that plaintiffs' petition alleges they first became aware of the damage to their property by deposits of sand and debris in April, 1970; that the continuous flow of sewage effluent began in May, 1971, and plaintiffs' suit was not filed until July 19, 1972, more than one year after the beginning of any activity on which their complaints are based. Defendants further contend that should plaintiffs' argument be accepted that the damages alleged to have been suffered by them are of a continuous nature and not subject to the one-year prescriptive period under the rule of Devoke v. Yazoo & M.V.R. Co., 211 La. 729, 30 So.2d 816 (1947), then the burden rests on them to apportion the damage which has occurred after the period fixed for prescription. As no such evidence was presented defendants rely on the decisions in Parro v. Fifteen Oil Co., 26 So.2d 30 (La.App.1st Cir. 1946), and Beauvais v. D. C. Hall Transport, 49 So.2d 44 (La.App.2nd Cir. 1950), in urging plaintiffs have not carried their burden of proof in this regard.
The opinion of this court in Freestate Industrial Development Co. v. T. & H., Inc., 188 So.2d 746 (La.App.2nd Cir. 1966) discusses the application of prescription under Articles 3536 and 3537 to actions stemming from the exercise of predial servitude as follows:
"Articles 3536 and 3537 of the Louisiana Revised Civil Code establish a one year prescriptive period for quasi offenses and for quasi offenses causing damage to land. The jurisprudence interpreting these articles has formulated the rule that prescription accrues from the date the landowner had reasonable cause to believe that his property had been damaged, and such prescription attaches to each tortious act. Where there is recurring or continuous damage prescription accrues from the date of completion of each act that precipitates such damage. * * *
"The essence of plaintiff's action, as evidenced by the primary demand for injunctive relief, is to prohibit an unlawful abuse of the predial servitude owed by plaintiff's estate to defendant's estate. Plaintiff's action herein lies not in tort, but within the provisions of Article 660 of the Louisiana Revised Code which provide, in part:
"It is a servitude due by the estate situated below to receive the waters which run naturally from the estate situated above, provided the industry of man has not been used to create that servitude.

* * * * * *
"The proprietor above can do nothing whereby the natural servitude due by the estate below may be rendered more burdensome.

*882 "In this respect the instant case is similar to the cases of McGee v. Yazoo & M.V.R. Co., 206 La. 121, 19 So.2d 21 (1944) and Devoke v. Yazoo & M.V.R. Co., 211 La. 729, 30 So.2d 816 (1947), wherein the Louisiana Supreme Court held that the prescriptive period of Articles 3536 and 3537 of the Louisiana Revised Civil Code did not apply to causes of action brought under Articles 666, 667, 668 and 669 of the Louisiana Revised Civil Code. In the McGee and Devoke cases, supra, it was noted that plaintiff's action was not in tort, but one springing from an obligation, imposed by operation of law, regarding the use and enjoyment of neighboring estates."
We find the circumstances presented in the instant case to fall squarely within the holding of Freestate and are of the opinion the exception of prescription was properly overruled.

Issue of Liability and Right to Injunctive Relief
Defendants contend that both of the activities carried on by them for which plaintiffs seek damages and injunctive relief are within the lawful exercise of the rights of ownership or property and the rights accorded to the dominant estate under the articles of the Civil Code providing for the servitude of drain. They urge that the trial judge after finding plaintiffs' cause of action to fall within the doctrine of sic utere (Article 667), failed to give appropriate consideration to the rights and privileges accorded defendants under Articles 660, 668 and 669.
The subject articles of the Civil Code read as follows:
"Art. 660. It is a servitude due by the estate situated below to receive the waters which run naturally from the estate situated above, provided the industry of man has not been used to create that servitude.
"The proprietor below is not at liberty to raise any dam, or to make any other work, to prevent this running of the water.
"The proprietor above can do nothing whereby the natural servitude due by the estate below may be rendered more burdensome."
"Art. 667. Although a proprietor may do with his estate whatever he pleases, still he can not make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him.
"Art. 668. Although one be not at liberty to make any work by which his neighbor's buildings may be damaged, yet every one has the liberty of doing on his own ground whatsoever he pleases, although it should occasion some inconvenience to his neighbor.
"Thus he who is not subject to any servitude originating from a particular agreement in that respect, may raise his house as high as he pleases, although by such elevation he should darken the lights of his neighbors's [neighbor's] house, because this act occasions only an inconvenience, but not a real damage.
"Art. 669. If the works or materials for any manufactory or other operation, cause an inconvenience to those in the same or in the neighboring houses, by diffusing smoke or nauseous smell, and there be no servitude established by which they are regulated, their sufferance must be determined by the rules of the police, or the customs of the place."
There is no dispute that plaintiffs' property is servient to the natural drain from defendants' property through the system of ditches and culverts connecting this pattern of drainage.
As we understand defendants' position in brief to this court they do not contend they had the privilege to cause sediment to collect *883 on plaintiffs' property in the exercise of the servitude claimed by them under Article 660, but rely on the theory that the cause of this condition was plaintiffs' actions in altering the ditch to the extent it could not afford the same efficiency of drainage as the connecting ditches. Specifically, defendants contend plaintiffs' change in the design of the ditch from its former state of a gulley with steep sloping sides to that of a gradual sloping swale with grass sod over its entire area made it highly susceptible of retaining deposits of soil or other debris from water flowing across it. Defendants contend this action of plaintiffs violates the obligations of the owner of the servient estate under Article 660 to actively maintain ditches so they will receive the waters from the dominant estate, citing Nicholson v. Holloway Planting Company, 216 So.2d 562 (La.App.1st Cir. 1968), in support of this interpretation. Additionally, defendants urge the provisions of Article 668 require plaintiffs to suffer some inconvenience in the exercise of the servitude by the dominant estate.
Lastly, defendants argue their use of the servitude of natural drain for disposal of the effluent from the sewage treatment plant is a valid exercise of this servitude so long as the quantity being discharged when added to the run-off of natural waters does not cause any overflow on plaintiffs' land. Defendants contend the evidence does not show such has occurred. Citing the provisions of Article 669 defendants contend that even should they not have the right by servitude to discharge sewage effluent into a natural drain, that the "custom of the place and rules of the police" would permit this to be done in the instant situation. It is pointed out in this connection that the nearest municipality, Bossier City, discharges raw sewage into Red River, and that the Department of Health has approved the operation of the defendants' method of disposing of sewage waste.
In response to defendants' argument plaintiffs contend the drainage swale on their property was adequate for the purpose of providing drainage of natural waters prior to the beginning of defendants' operations in April of 1970 and that the modifications made by them to the swale during the several years prior to that time did not constitute an impediment of a natural drain by the servient owner contrary to the provisions of Article 660.
Plaintiffs further contend the discharge of the effluent through their property has made the servitude of drain more burdensome contrary to the prohibitions of paragraph three of Article 660 in the following respects. Prior to the commencement of the flow of this effluent from defendants' property, there was only an intermittent flow of water following rainfall and the area was dry most of the time. This permitted plaintiffs to now the drain and maintain it in a comparable state to their yard. The flow of the liquid effluent is now constant and has rendered the entire area surrounding the drain too wet and boggy to be susceptible of being maintained as before. Plaintiffs also contend the nature of the liquid flowing from the disposal plant is more offensive than natural waters.
Under the provisions of Article 660 the extent of the servitude owed by plaintiffs is "to receive the waters which run naturally" from the dominant estate. The evidence shows the only natural flow of water into their land prior to the defendants' construction of the park was the intermittent drain of rainfall. Although there is some evidence that portions of plaintiffs' yard did flood occasionally during excessive rains, there was no evidence that the flow of water through the culverts was restricted or impaired in any respect. Therefore, plaintiffs' modification of the swale which caused no impairment in the capability of receiving this rainfall is of no consequence to the owners of the dominant estates situated above.
*884 We do not find any real issue in regard to an increase in the quantity of water being discharged upon plaintiffs from rainfall resulting from the construction undertaken by defendants. The principal issue in regard to the damage from construction operations stems from the deposits of silt and debris and will be discussed hereafter along with the review of damages.
The most serious question presented is whether defendants' use of the servitude of drain for disposal of effluent has caused plaintiffs damages which are compensable and whether or not the damages are such that plaintiffs are entitled to an injunction to prevent the continuation thereof.
Defendants rely on the decisions in Adams v. Town of Ruston, 194 La. 403, 193 So. 688 (1940), and Borenstein v. Joseph Fein Caterers, Inc., 255 So.2d 800 (La.App.4th Cir. 1971), in support of their contention that the servitude of drain may be used by the dominant estate for more than intermittent rainfall. The facts of Borenstein are not analogous nor do we find that case to aid defendants' position. Adams is more analogous but again distinguishable from the instant situation. In Adams the Town of Ruston drained the water from a municipal natatorium into an adjoining natural drain several times a month during the swimming season. This caused severe erosion of a drainage ditch on the plaintiffs' unimproved property which the court found owed a servitude of drain. Injunctive relief was denied plaintiff in that case as the court observed the use of the drain was very infrequent and that, although plaintiff had suffered some damage, it was not such as to warrant prohibiting the use of the municipal pool costing $27,500.
As we understand Adams, the court simply balanced the interests of the parties in determining whether under the circumstances presented the harsh remedy of an injunction should be afforded. There was no demand for monetary damages involved in the decision.
Defendants also cite LRS 56:1461 and 56:1462 as appropriate for guidelines in interpreting the provisions of Article 660. These are statutes dealing with pollution of streams in the interest of preservation of aquatic life and have no analogy to the type of damage claimed by plaintiffs herein. The natural drain on plaintiffs' property is not a flowing branch or creek but merely an area which is subject to the intermittent passage of waters resulting from rainfall.
We are of the opinion that the installation of the sewage disposal plant on defendants' property with the accompanying discharge of the effluent into the system of drainage has created a substantial change in the servitude of drain, rendering it more burdensome on plaintiffs. The evidence convinces us that this is more than just an inconvenience which should be borne by the owner of the servient estate as urged by defendants.
We find no error, however, in the refusal of the trial judge to order injunctive relief. The determination of whether injunctive relief is necessary when the injury complained of by plaintiffs may be easily compensated by the payment of money is within the sound discretion of the trial court. Freestate Industrial Development Co. v. T. & H., Inc., supra; Town of Ruston, supra; Young v. International Paper Co., 179 La. 803, 155 So. 231 (1934); also see City of Harrisonville, Mo. v. W. S. Dickey Clay Mfg. Co., 289 U.S. 334, 53 S.Ct. 602, 77 L.Ed. 1208 (1933), which was relied on in the foregoing cases.
The preponderance of the evidence shows the effluent has no odor at the present time nor does it pose any apparent health hazard to plaintiffs. The issuance of an injunction which would paralyze the sewage disposal from the 80 to 90 mobile home dwellers presently occupying the mobile home park would be too harsh a remedy when there are other means available to compensate plaintiffs for their damage.

*885 REVIEW OF DAMAGES
On the question of damages to plaintiffs' property, the record contains the testimony of a number of witnesses called by either party in regard to what is necessary to correct the condition of plaintiffs' property and the cost of the various methods.
Plaintiffs presented George Fowler, a pipeline contractor, who testified that to remedy the flow of sewage effluent a line could be tied into the line of defendants which empties into the highway ditch on the north side of U.S. Highway 80. This line could be bored under the highway and run underground through the drain on plaintiffs' property into the creek bed on the south boundary. His estimate of cost was $2,535.00 for installation of such a line. In addition he made an estimate of the cost of constructing a drainage ditch ten feet across and ten feet in depth along plaintiffs' boundary. Excavation of such a ditch was estimated at $1,760.00. Also he gave testimony regarding the cost of a smaller ditch with a concrete bottom and side retaining walls which would accommodate the flow of the sewage effluent without saturating the surrounding soil. This estimate was $5,000.
Plaintiff offered the testimony of Jim Winford, a paving contractor who testified the cost of paving such a ditch would run approximately $10,000.
Plaintiff also offered the testimony of a real estate appraiser, Kennon Harvill, who testified plaintiffs' property had suffered a loss in market value because of the damages occasioned from defendants' activities and estimated the loss at $7,550. He used the cost-to-cure method of arriving at the amount and testified to what he found a remedial ditch would cost.
Defendants offered O. L. Jordan, a real estate appraiser, who testified plaintiffs' property would sustain no loss in value if an appropriate drainage ditch was excavated. He estimated the cost $1,355.60. He did not consider it necessary to concrete the bottom or slope of the ditch.
After hearing this testimony the trial judge concluded:
"The damage done to the Moreland homesite was caused by the activities of the defendants in the construction and operation of their Mobile Home Park, but it is not irreparable. The Moreland lawn can be restored to its former beauty by re-excavation of the depression or drainage swale to its former grade, the installation of a `tight line' under U.S. Highway 80 through the Moreland property to the creek on its south boundary to a depth sufficient to allow proper maintenance, covering of the `tight line' or pipe and resodding with St. Augustine grass.

* * * * * *
"The proper measure of damages is the cost of restoration of the plaintiffs' property to its condition prior to the construction of the defendants' Mobile Home Park. Considering the testimony of all of the experts, the Court is of the opinion that restoration of the Moreland property can be accomplished in the manner hereinabove described for the sum of Six Thousand ($6,000) Dollars and that amount will be awarded to the plaintiffs for that purpose."
It appears to us that the method accepted by the trial judge would most nearly restore plaintiffs' property to the state it was in prior to the installation of defendants' mobile home park. Nor can we say the court abused the wide discretion accorded it in determining the damages for this corrective work, based on the wide variance in the testimony of the witnesses in this regard. It is obvious Mr. Fowler overlooked the cost of a diversionary routing of the flow while the necessary excavation for the laying of the tight line could be accomplished. The testimony of Mr. Winford shows this item could cost a considerable amount.
*886 We further find the award to each plaintiff of the sum of $1,500 for emotional distress occasioned by the damage to their property, although somewhat high, is within the discretion accorded the trial judge. Such damages have been allowed in cases involving strict or absolute liability or a continuing nuisance. McGee v. Yazoo & M.V.R. Co., 206 La. 121, 19 So.2d 21 (1944); Fontenot v. Magnolia Petroleum Co., 227 La. 866, 80 So.2d 845 (1955).
Plaintiffs have endured the conditions affecting their property for a period of nearly five years and the record reflects they have undergone considerable anxiety and worry in connection with this problem.
For the foregoing reasons the judgment appealed from is affirmed at appellants' cost.